FILED
United States Court of Appeals
Tenth Circuit

September 1, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

THE WILDERNESS SOCIETY and
SOUTHERN UTAH WILDERNESS
ALLIANCE,

      Plaintiffs–Appellees,

v.

KANE COUNTY, UTAH; DANIEL
W.
HULET, MARK W. HABBESHAW,
and DUKE COX, in their official
capacities as Kane County
Commissioners,

      Defendants–Appellants,

------------------------------

UTAH ASSOCIATION OF
COUNTIES;
NATIONAL TRUST FOR HISTORIC
PRESERVATION; PATRICK A.
SHEA,
MICHAEL P. DOMBECK, and
JAMES
BACA, former Directors of the Bureau
of Land Management,

      Amici Curiae.

No. 08-4090
(D.C. No. 2:05-CV-00854-TC)

---

**ORDER**

---

This matter is before the court to reissue the decision filed in this appeal yesterday. Due to clerical error in the original filing, the Clerk is directed to reissue the Opinion *nunc pro tunc* to August 31, 2009. A copy of the amended opinion and dissent is attached to this order.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

FILED
United States Court of Appeals
Tenth Circuit

August 31, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENT CIRCUIT

THE WILDERNESS SOCIETY and
SOUTHERN UTAH WILDERNESS
ALLIANCE,

     Plaintiffs–Appellees,

v.

KANE COUNTY, UTAH; DANIEL W.
HULET, MARK W. HABBESHAW,
and DUKE COX, in their official
capacities as Kane County
Commissioners,

     Defendants–Appellants,

------------------------------

UTAH ASSOCIATION OF COUNTIES;
NATIONAL TRUST FOR HISTORIC
PRESERVATION; PATRICK A. SHEA,
MICHAEL P. DOMBECK, and JAMES
BACA, former Directors of the Bureau
of Land Management,

     Amici Curiae.

No. 08-4090

Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:05-CV-00854-TC)

Michael S. Lee (Shawn T. Welch and Kendra Shirey, Holme Roberts & Owen LLP, Salt Lake City, Utah, with him on the briefs), Howrey LLP, Salt Lake City, Utah, for Defendants–Appellants.

James S. Angell (Edward B. Zukoski; Heidi J. McIntosh and Stephen H.M. Bloch, Southern Utah Wilderness Alliance, with him on the briefs), Earthjustice, Denver, Colorado, for Plaintiffs–Appellees.

---

Before **LUCERO**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

More than 1.6 million acres of federal public land lie within Kane County, Utah, which includes some of the most fragile and picturesque public lands in the United States. This case involves a dispute over alleged but unproven rights of way over these federal lands created by a Reconstruction-era law known as Revised Statute 2477 ("R.S. 2477"). At base, we face an ordering question: May a county exercise management authority over federal lands in a manner that conflicts with the federal management regime without proving that it possesses valid R.S. 2477 rights of way? As did the district court, we answer this question in the negative.

There are thousands of miles of claimed R.S. 2477 rights of way across federal lands in the western United States. This case involves some of those rights. In most instances, the scope and extent of such rights have never been placed at issue. This case involves some of those claimed R.S. 2477 rights as to

which a dispute has arisen.[1]  Apparently claiming valid but admittedly

unadjudicated R.S. 2477 rights, Kane County enacted an ordinance opening routes

on federal land to off-highway vehicle ("OHV") use.  It removed Bureau of Land

Management ("BLM") signs from the routes in question, replacing them with its

own signs.  Two environmental groups, The Wilderness Society ("TWS") and the

Southern Utah Wilderness Alliance ("SUWA") (collectively, the "environmental

plaintiffs"), filed suit, alleging that the Ordinance and the County's signage

activities were preempted by federal law.

Kane County advanced numerous arguments below, contending:  (1) the

environmental plaintiffs lacked standing; (2) the case became moot when the

County rescinded the challenged ordinance; (3) the environmental plaintiffs did

not possess a cause of action; and (4) both the United States and the State of Utah

were necessary and indispensable parties.  Rejecting each of these assertions, the

district court found that Kane County's activities were preempted and enjoined it

from enacting similar ordinances or posting signs on unproven R.S. 2477 routes.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[1] The protestations of the dissent notwithstanding, this case does <u>not</u> involve county use or management of R.S. 2477 rights of way that do not conflict with a federal management regime on federal public lands.  The dissent is correct in its statement that R.S. 2477 rights of way are in consistent use throughout the West and nothing herein purports to speak to or address the right to the continued existence and use of such roads as to which a conflict has <u>not</u> arisen.

# I

## A

Nearly 1.3 million of the 1.6 million acres of federal public land in Kane County lie within Grand Staircase-Escalante National Monument ("Grand Staircase-Escalante" or "the Monument"). The other areas involved in this case include: Glen Canyon National Recreation Area ("Glen Canyon NRA"), Paria Canyon-Vermilion Cliffs Wilderness Area ("Paria Canyon"), and Moquith Mountain Wilderness Study Area ("Moquith Mountain WSA").[2] Although these lands are managed under a variety of federal statutes and regulations, all of the lands in question must be managed "subject to valid existing rights." Federal Land Policy and Management Act of 1976 ("FLPMA"), Pub. L. No. 94-579, § 701(h), 90 Stat. 2744, 2786 (1976); see also 43 U.S.C. § 1782(c) (WSAs, including Moquith Mountain); Arizona Wilderness Act of 1984, Pub. L. No. 98-406, §§ 301(a)(7), 302(a), 98 Stat. 1485, 1493 (1984) (Paria Canyon Wilderness Area); An Act to establish the Glen Canyon National Recreation Area in the States of Arizona and Utah, Pub. L. No. 92-593, § 3(a), 86 Stat. 1311, 1312 (1972) (Glen Canyon NRA); Grand Staircase-Escalante National Monument Management Plan 46 (1999), available at http://www.blm.gov/ut/st/en/fo/

---

[2] The environmental plaintiffs initially asserted claims regarding Trail Canyon, Hog Canyon, Parunuweap Canyon, and Orderville Canyon Wilderness Study Areas ("WSAs"), Bryce Canyon National Park, and Zion National Park. These claims were withdrawn below and are not at issue on appeal.

grand_staircase-escalante/planning/ monument_management.html [hereinafter Monument Plan] (Grand Staircase-Escalante).

Overlaying this complex framework is R.S. 2477, which created rights of way to construct highways over public land. That statute allows the creation of rights of way without any "administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested." S. Utah Wilderness Alliance v. BLM, 425 F.3d 735, 741 (10th Cir. 2005) [hereinafter SUWA v. BLM]; accord An Act Granting the Right of Way to Ditch and Canal Owners Over the Public Lands, and for Other Purposes, ch. 262, § 8, 14 Stat. 251, 253 (1866), repealed by FLPMA § 706(a). Because FLPMA repealed R.S. 2477, no new R.S. 2477 rights have been created since 1976. SUWA v. BLM, 425 F.3d at 741. Then-existing rights, however, were explicitly preserved. Id.

**B**

The ongoing feud over OHV use on federal lands in Kane County has its roots in a Department of the Interior land management plan that governs Grand Staircase-Escalante. Notice of the plan was published in the Federal Register. Grand Staircase-Escalante National Monument Approved Management Plan and Record of Decision, 65 Fed. Reg. 10,819 (Feb. 29, 2000). Included in the Monument Plan was a map, known as "Map 2," which displays all roads in the

Monument that are open to vehicle traffic. Monument Plan 46. Roads not indicated as open on Map 2 are closed "subject to valid existing rights." Id.

In 2003, after asserting that BLM road signs inside the Monument violated state law, Kane County officials unilaterally removed thirty-one such signs. Thirty of the removed signs restricted OHV travel. Approximately a year and a half later, county officials began erecting numerous county road signs on federal lands. Despite ongoing dialogue with BLM regarding which roads were disputed and which were agreed-upon R.S. 2477 roadways and a request from BLM that the County not place signs on the disputed roadways, Kane County pursued its signage program unabated. The environmental plaintiffs claim that Kane County placed 268 signs on BLM lands, including 103 inside Grand Staircase-Escalante, at least sixty-three of which purport to open routes to OHV use that are closed to such use under the Monument Plan.[3]

On August 22, 2005, the Kane County Board of Commissioners passed Ordinance 2005-03 (the "Ordinance") to regulate OHV use on county Class B and Class D roads.[4] The Ordinance authorized Kane County to create a map showing

_____

[3] The dissent ignores the history leading up to this litigation and mischaracterizes the status quo as an oasis of peace in which the environmental plaintiffs walked in and kicked up a dust storm of controversy in order disturb the stasis of tranquility and interject the federal courts.

[4] Class B roads are those on which the State of Utah has paid for improvements. Utah Code Ann. § 72-3-103. Class D roads include "any road, way, or other land surface route that has been or is established by use or

(continued...)

- 6 -

which roads are open to OHV use, or to "post signs designating lands, trails, streets, or highways open to OHV use." Kane County opted not to create an OHV map pending a final decision in SUWA v. BLM, which also implicated the interplay between alleged R.S. 2477 rights and BLM regulation.[5] Yet, Kane County admitted before the district court that the Ordinance authorized OHV use on routes within the Monument that do not appear on Map 2, as well as routes in Glen Canyon NRA, Paria Canyon, and Moquith Mountain WSA. Kane County further admitted that "no court or federal agency has issued a binding, final determination that Kane County possesses R.S. 2477 rights-of-way for any Class B and Class D road" in those four areas with one exception, Skutumpah Road. BLM administratively determined that Skutumpah Road is an R.S. 2477 right of way, although such administrative determinations are not legally binding, SUWA v. BLM, 425 F.3d at 757-58.

**C**

---

[4](...continued)
constructed and has been maintained to provide for usage by the public for vehicles with four or more wheels that is not a class A, class B, or class C road." § 72-3-105(1).

[5] Because a map was not adopted as part of the Ordinance, the parties quarreled over which map accurately depicted the disputed roadways for much of the time the case was pending before the district court. Kane County argued that 1978 maps were "irrelevant" but that the 1996 Map contained all roads with numbered signs. TWS eventually agreed that the district court should tailor its relief based on the 1996 Map.

Shortly after passage of the Ordinance, the environmental plaintiffs filed suit in United States District Court for the District of Utah on October 13, 2005. On that date, the county signs in controversy were still posted. They sought declarations that the Ordinance and Kane County's signage program are preempted because they conflict with federal management schemes. They also requested an injunction prohibiting Kane County from adopting an ordinance or otherwise opening roads that are closed to OHV use under federal law and ordering the County to remove its signs from all such routes.

Kane County moved to dismiss under several sections of Federal Rule of Civil Procedure 12(b), arguing lack of subject matter jurisdiction, failure to state a claim, and failure to join necessary and indispensable parties (the State of Utah and the United States). The district court rejected each of these arguments, agreeing with the environmental plaintiffs that it "need not make any final determination regarding the existence of any R.S. 2477 right-of-way in order to grant TWS's requested relief." Following this order, Kane County filed a Rule 59(e) motion to alter or amend the court's order denying dismissal, seeking permission to prove in this case that it possesses R.S. 2477 rights of way. The Rule 59(e) motion was denied, and Kane County filed a notice of appeal from denial of the motion to dismiss. That appeal was then dismissed by stipulation of the parties.

In the same order in which it denied Kane County's motion to dismiss, the court granted the environmental plaintiffs' motion to amend their complaint. The amended complaint added an Endangered Species Act claim against BLM and the U.S. Fish and Wildlife Service. These federal defendants later moved successfully to dismiss the Endangered Species Act claim, and it is not at issue in this appeal.

On December 11, 2006, Kane County rescinded Ordinance 2005-03, indicating in the minutes of its meeting that it did so to "secure the most successful legal resolution to current federal roads litigation." County Commissioner Mark W. Habbeshaw testified that he did not intend to reenact a similar ordinance "<u>right away</u>." (Emphasis added). After the Ordinance was rescinded, Kane County removed all decals permitting OHV use from its road signs. Some of the signs were removed entirely.

On May 1, 2007, Kane County filed a second motion to dismiss, contending that plaintiffs' claims had been mooted by rescission of the Ordinance and removal of the OHV decals. Kane County also repeated its challenge to the environmental plaintiffs' standing. While this motion was pending, Kane County moved to strike portions of the declaration of Wayne Y. Hoskisson, which had been attached as an exhibit to plaintiffs' opposition to the motion to dismiss. Kane County alleged that Hoskisson testified to matters not within his personal

knowledge and proffered hearsay. The County also moved to strike as hearsay a newspaper article attached to the same opposition.

At a hearing on the motions to dismiss, the court indicated that the materials subject to the motion to strike were unnecessary and thus it would disregard them and deny the motion to strike as moot. It then denied Kane County's motion to dismiss, indicating:

> Kane County failed to meet its burden of demonstrating that TWS's claims concerning Kane County Ordinance 2005-03 were moot, given statements and deposition testimony by Kane County commissioners concerning the enactment of off-highway vehicle legislation. Kane County failed to show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."

On November 14, 2007, the environmental plaintiffs moved for summary judgment on their two original preemption claims. Among other undisputed facts, they relied on Kane County's admission that "no court or federal agency has issued a final, binding determination that Kane County possesses R.S. 2477 rights-of-way for any Class B or Class D road" in the relevant areas (excepting Skutumpah Road). The environmental plaintiffs relied on the County's 1996 map, which includes several roads not depicted on Map 2 of the Monument Plan. As to Moquith Mountain WSA and Paria Canyon, the environmental plaintiffs showed that there are roads displayed as county roads on the County's 1996 Map that are not designated as open by the federal government, relying on the uncontroverted deposition testimony of Kane County's Transportation System Director.

Kane County opposed summary judgment on various grounds. It also sought a continuance to conduct discovery under Federal Rule of Civil Procedure 56(f) and moved to strike as hearsay two letters submitted by plaintiffs in support of summary judgment. Just before a scheduled hearing on plaintiffs' motion, Kane County filed a competing motion for partial summary judgment, seeking a finding that Skutumpah Road and Windmill Road traverse valid existing R.S. 2477 rights of way. In part, the County relied on the Department of the Interior's administrative determination that Skutumpah Road is a valid R.S. 2477 highway. It also relied on evidence indicating historical usage of these roadways prior to 1976, including affidavits from long-time Kane County residents.

In May 2008, the district court granted summary judgment in favor of the environmental plaintiffs. It denied Kane County's Rule 56(f) motion for additional discovery[6] and denied as moot the County's motion to strike, finding that the letters subject to the motion were unnecessary to determine whether summary judgment was appropriate. On the merits, the district court rejected Kane County's assertion that unadjudicated R.S. 2477 rights could defeat a preemption claim. It explained that its decision

> need not rest on a determination regarding the veracity of any [R.S. 2477] claims the County might have. Rather, the Court need only recognize that the presumption on federal land is that ownership and management authority lies with the federal government and that any adverse claimant, like the County here perhaps, is not entitled to win

---

[6] Kane County did not appeal this denial.

> title or exercise unilateral management authority until it successfully has carried its burden of proof in a court of law.

The court rejected Kane County's position that the Skutumpah Road had been held to be a R.S. 2477 right of way in federal court, and it determined that the Ordinance and signage program conflicted with several federal statutes, regulations, and land management plans. Accordingly, the court declared that the Ordinance and Kane County's signs in Grand Staircase-Escalante and Moquith Mountain WSA violated the Supremacy Clause. It ordered the County to remove "those County road signs that conflict with federal land management plans or federal law as identified in this Order" and enjoined the County from adopting ordinances, posting signs, or purporting to manage or open any route closed to vehicle use by governing federal law "unless and until Kane County proves in a court of law that it possesses a right-of-way to any such route."

At the same time, the court denied Kane County's motion for partial summary judgment, determining that the current lawsuit was not a proper avenue to resolve such issues because the federal government was not a party, the environmental plaintiffs do not claim title to the rights of way, and because Kane County had not filed a claim under the Quiet Title Act. Final judgment was entered a few days later, and Kane County timely appealed.

## II

On appeal, Kane County argues that the environmental plaintiffs lack standing. Specifically, the County contends that the environmental plaintiffs' "attempt to use the Supremacy Clause as its cause of action is the necessary product of its lack of a case or controversy with Kane County."

### A

Absent a plaintiff with constitutional standing, federal courts lack jurisdiction. See Summers v. Earth Island Inst., 129 S. Ct. 1142, 1148-49 (2009). Constitutional standing requires: (1) an injury in fact, (2) causation, and (3) redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). To satisfy the injury in fact prong, a plaintiff must show an "invasion of a legally protected interest," which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Stewart v. Kempthorne, 554 F.3d 1245, 1253 (10th Cir. 2009) (quotation omitted). Causation requires that "the injury is fairly traceable to the challenged action of the defendant." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000). Lastly, the redressability prong is met when "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 181.

TWS and SUWA assert standing to sue on behalf of their members. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are

- 13 -

germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. We assess standing "as of the time the action is brought," and our review is de novo. Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005).

In the environmental context, a plaintiff who has repeatedly visited a particular site, has imminent plans to do so again, and whose interests are harmed by a defendant's conduct has suffered injury in fact. See Summers, 129 S. Ct. at 1149. It is well-settled that "[w]hile generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." Id. (citing Sierra Club v. Morton, 405 U.S. 727, 734-36 (1972)). Conversely, a plaintiff seeking prospective relief whose alleged injury is unmoored from any particular site is "not tied to application of the challenged regulations," and "relates to past injury rather than imminent future injury" lacks standing. Id. at 1150.

**B**

The environmental plaintiffs submitted detailed declarations from their members to the district court, one from Jill N. Ozarski and another from Liz Thomas, which establish associational standing. Both declarants allege harms to their health, recreational, scientific, spiritual, educational, aesthetic, and other interests. Ozarski's declares:

- 14 -

> I use and enjoy the natural resources on BLM lands and NPS lands for many health, recreational, scientific, spiritual, educational, aesthetic, and other purposes and have used and enjoyed for these same purposes, the lands that make up [Grand Staircase-Escalante], other BLM lands, and Bryce Canyon and Zion National Park lands within Kane County. I enjoy hiking with my friends, camping, birdwatching, discovering fossils and archaeology, study, contemplation, solitude, photography, and other activities on these public lands. I have visited public lands in Kane County, and particularly lands within the Monument, at least four times per year for multiple days since 2003, and intend to return as often as possible, and certainly within the next six months.

Even more specifically, Ozarski avers that "[s]ome of the places where I have recreated include areas adjacent to the Hole-in-the-Rock road, Hackberry Canyon, Buckskin Gulch, Paria Canyon and the White House Campground, and the Skutumpah Road area."

As to OHV usage, Ozarski states that she "seek[s] out and prefer[s] to use those federal public land[s] that are more wild; in other words, those lands that are not burdened by [OHV] use." With respect to the signage program and the Ordinance, Ozarski declares that her

> health, recreational, scientific, spiritual, educational, aesthetic, informational, and other interests are directly affected and harmed by Kane County's actions in erecting signs and adopting an ordinance that attempts to override parts of the Monument Plan and other federal plans by opening to off-road vehicles routes and areas closed to such use under applicable federal management plans.

She states that she is "less likely to return to areas where [OHV] use is likely to occur, given Kane County's actions purporting to open certain areas to [OHVs]." Thomas' declaration is similar.

Under both Summers and Morton, these declarations are more than sufficient to establish injury in fact. Both declarants aver that they have visited specific sites near contested roadways on several occasions and plan to do so again within the year. Both also allege that OHV use near those sites will negatively impact their recreational and aesthetic interests. These declarations contain none of the pleading deficiencies identified in Summers. See 129 S. Ct. at 1150 (declaration insufficient to demonstrate standing "because it was not tied to application of the challenged regulations, because it does not identify any particular site, and because it relates to past injury rather than imminent future injury that is sought to be enjoined").

In advancing its peculiar and particularized view of standing, the dissent strenuously argues that the environmental groups lack standing because they did not suffer harm to a "legally protected interest" conferred by state or federal law. (Dissenting Op. 8 ("We may sympathize with the plaintiffs' desire to enjoy southern Utah's canyon country without the intrusion of vehicles, but the plaintiffs can point to no law giving them a legally protected interest in the matter.").) Despite the dissent's apparent desire to hold that only ownership of land or a statutorily conferred right could directly or derivatively confer standing, and its desire to actively rollback standing jurisprudence, this court has previously explained that the term "legally protected interest" refers to a

- 16 -

"judicially cognizable interest."  In re Special Grand Jury 89-2, 450 F.3d 1159,

1172 (10th Cir. 2006) (citing Bennett v. Spear, 520 U.S. 154, 167 (1997)).

The dissent argues that equating "legally protected" with "judicially

cognizable" renders us guilty of "judicial self-empowerment."  (Dissenting Op.

11.)  Yet it is the dissent that seeks to impose a sea change on firmly-established

standing jurisprudence.  The Supreme Court has used the two phrases

interchangeably since "legally protected" was introduced in Lujan.  Cf. Judicial

Watch, Inc. v. United States Senate, 432 F.3d 359, 364-65 (D.C. Cir. 2005)

(Williams, Senior J., concurring) (collecting cases); see also In re Special Grand

Jury 89-2, 450 F.3d at 1172 ("The post-Lujan opinion in Bennett v. Spear, 520

U.S. 154 (1997), written for a unanimous court by Lujan's author, may have been

trying to dispel some of this confusion by substituting 'judicially cognizable

interest,' id. at 167, for 'legally protected interest' in the definition of injury in

fact.").  The dissent's suggestion that our analysis breaks new ground is entirely

misplaced.

Rather than requiring a specific statutory or common law right, as the

dissent suggests,[7] a judicially cognizable interest is simply "the sort of interest

_____

[7] The dissent's suggestion would appear better-suited to the right of action
inquiry.  As we have previously held, the standing and right of action inquiries
are distinct.  See Dohaish v. Tooley, 670 F.2d 934, 936-37 (10th Cir. 1982).
The dissent's contention that legally protected interests must be based in property
or a specific statute is groundless.  "That the litigant's interest must be greater
than that of the public at large does not imply that the interest must be a
(continued...)

- 17 -

that courts think to be of sufficient moment to justify judicial intervention." In re Special Grand Jury 89-2, 450 F.3d at 1172.  As the Supreme Court explained in Raines v. Byrd, 521 U.S. 811 (1997), this requirement asks whether "the injury [is] too abstract, or otherwise not appropriate, to be considered judicially cognizable?" Id. at 819.  It would not be met, for example, by "a person complaining that government action will make his criminal activity more difficult" because such a complainant's "interest is not legally protected." Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006) (quotation and citation omitted).

In the present action, members of the environmental group plaintiffs allege sufficient injury to their recreational, aesthetic, and other interests.  As discussed above, the Supreme Court has repeatedly recognized such interests as deserving of legal protection, and this court has held the same.  See San Juan County v. United States, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc).  In San Juan County, we unambiguously held:  "We think it indisputable that SUWA's environmental concern is a legally protectable interest." Id. at 1199.  The dissent attempts to distinguish this plain statement by noting that it was included in a section discussing intervention.  (Dissenting Op. 9-10.)  But the proposition for

_____

[7](...continued)
substantive right sounding in property or contract." Cantrell v. City of Long Beach, 241 F.3d 674, 681(9th Cir. 2001).  Instead, "[t]o allege a legally protected, concrete aesthetic interest, a plaintiff must show merely that the challenged action affects his aesthetic or ecological surroundings." Id.

which we cite <u>San Juan</u> is not that environmental interests are sufficient for standing per se, but that such interests are legally protectable. The en banc court decided in no uncertain terms that SUWA's environmental interests, which are essentially identical to the interests asserted by the environmental plaintiffs here, are legally protectable. The dissent offers no support for its assertion that an interest can be legally protectable for intervention purposes but not for standing purposes. As a leading treatise notes, the phrase "legally protected interest" provides "ample opportunity for mischief should a court be bent on denying the reality of a sufficient injury-in-fact." 13A Charles Alan Wright et al., Federal Practice and Procedure § 3531.4, at 149 (3d ed. 2008).

Based on this well-established precedent, we conclude that the environmental plaintiffs' interests in this case are "of sufficient moment to justify judicial intervention" and to satisfy Article III's injury in fact requirement. <u>In re Special Grand Jury 89-2</u>, 450 F.3d at 1172.

Kane County counters that the only injuries alleged by the environmental plaintiffs are those of the United States. We disagree. The environmental groups have shown that their members' legally protected interests in enjoying the areas at issue are harmed by unlawful OHV use. When an alleged injury "affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." <u>Id.</u> at 1149 (citation omitted).

The Ozarski and Thomas declarations also satisfy the causation requirement. The environmental plaintiffs allege that they have been harmed as a result of Kane County's preempted actions. Whether those actions actually conflict with federal law lies at the heart of the merits issues in this case. Thus, for purposes of our standing analysis, we must assume the truth of the preemption allegations. See Day v. Bond, 500 F.3d 1127, 1137 (10th Cir. 2007), reh'g denied, 511 F.3d 1030 (10th Cir. 2007), cert. denied, 128 S. Ct. 2987 (2008); see also Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc).

Kane County contends that the disputed routes were open to OHV use prior to passage of the Ordinance and its sign posting, and thus neither action caused any injuries related to OHV use. Yet we must assume for standing purposes that the roads in question were closed under federal authority. By passing the Ordinance and replacing federal signs with county signs that permit OHV use, Kane County opened the disputed roads to OHV travel. We are satisfied that there is a "substantial likelihood" that these actions increased—and if left uncorrected, will increase—OHV usage on the roads, which in turn harms the recreational and other interests of the environmental plaintiffs' members.

Regarding redressability, we agree with the environmental plaintiffs that an order declaring the Ordinance unconstitutional and an injunction requiring Kane County to remove its signs and prohibiting it from taking similar actions in the

future would "likely" redress the alleged injury. See Laidlaw Envtl. Servs., 528 U.S. at 181. Kane County asserts that OHV use will continue on the disputed routes irrespective of an injunction. But plaintiffs need not show that a favorable ruling would halt all OHV use. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." Larson v. Valente, 456 U.S. 228, 243 n.15 (1982); see also Nova Health Sys., 416 F.3d at 1158 ("The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury."). We inevitably conclude that removal and replacement of county signs and an injunction prohibiting the County from repeating its unconstitutional actions would likely dissuade at least one person from driving an OHV on a disputed route.

This is not a case in which an outcome favorable to plaintiffs would afford relief only "through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of [a court's] power," but rather one in which the court could afford direct relief against the County, which will in turn likely redress the injury. See Nova Health Sys., 416 F.3d at 1159 (quotation omitted) (recognizing that effect of judgment may be indirect for redressability purposes). Moreover,

we are not quick to presume that citizens will flout the law. Accordingly, the environmental plaintiffs have demonstrated redressability.[8]

## C

Based on the foregoing analysis, we conclude that individual members of the environmental organizations have standing to pursue these preemption claims. Environmental plaintiffs satisfy the remaining elements of associational standing. See Laidlaw Envtl. Servs., 528 U.S. at 181. The interests at stake in this case are germane to both organizations' purposes. As the declarations attest, TWS has "a keen interest in the preservation of the Grand Staircase-Escalante National Monument[,] . . . the protection of wilderness study areas (WSAs), designated wilderness, National Park lands, and other lands with wilderness character in Utah in general and Kane County in particular." SUWA is committed to "preservation of the outstanding wilderness at the heart of the Colorado Plateau, and the management of these lands in their natural state for the benefit of all Americans." Lastly, the relief sought—declaratory and injunctive relief—would apply generally to protect all of the groups' members, and thus the presence of

---

[8] Kane County repeatedly cites Southern Utah Wilderness Alliance v. Norton, 542 U.S. 55 (2004), to support its contention that the environmental plaintiffs lack standing. That decision is inapposite for several reasons, not the least of which is that Norton was not a constitutional standing case but rather concerned the availability of relief under the Administrative Procedure Act for agency inaction. Id. at 57-58.

individual litigants is not required.  Both TWS and SUWA possess associational

standing to pursue their preemption claims.

## III

## A

In its second jurisdictional challenge, Kane County argues that its

rescission of the Ordinance and removal of OHV decals from its road signs

mooted this case.  We take the district court's view of the matter.

We review questions of mootness de novo.  Chihuahuan Grasslands

Alliance v. Kempthorne, 545 F.3d 884, 891 (10th Cir. 2008).  "[A]n actual

controversy must be extant at all stages of review, not merely at the time the

complaint is filed."  Arizonans for Official English v. Arizona, 520 U.S. 43, 67

(1997) (quotation omitted).  A case is moot if a court can no longer grant

effective relief as a practical matter.  Kan. Judicial Review v. Stout, 562 F.3d

1240, 1246 (10th Cir. 2009); United States v. Hahn, 359 F.3d 1315, 1323 (10th

Cir. 2004) (en banc) (per curiam).

"Generally, repeal of a challenged statute causes a case to become moot

because it extinguishes the plaintiff's legally cognizable interest in the outcome,

rendering any remedial action by the court ineffectual."  Kan. Judicial Review,

562 F.3d at 1246.  However, when a defendant voluntarily ceases or rescinds the

complained-of action after being sued, it "bears the formidable burden of showing

that it is absolutely clear the allegedly wrongful behavior could not reasonably be

expected to recur." Laidlaw Envtl. Servs., 528 U.S. at 190. Under the voluntary cessation doctrine, rescission of a challenged enactment will only moot a controversy if "there is no evidence in the record to indicate that the legislature intends to reenact the prior version of the disputed statute [or ordinance]." Camfield v. City of Okla. City, 248 F.3d 1214, 1223-24 (10th Cir. 2001).[9] Because Kane County voluntarily rescinded the Ordinance after this action was filed, it "bears th[is] formidable burden." Laidlaw Envtl. Servs., 528 U.S. at 190.

Kane County falls well short of meeting that burden. When it rescinded the Ordinance, the Kane County Commission expressly indicated that it was attempting to "secure the most successful legal resolution to current federal roads litigation." In a press release included in the record, the County Commission stated that rescission was "deemed necessary pending the resolution of certain legal issues" and that litigating the validity of the Ordinance and ownership of the alleged rights of way "is too big a bite of the apple at one time." (Emphasis added). County Commissioner Habbeshaw testified that "it is not my intention to reenact [another ordinance] right away." (Emphasis added). Applying de novo review, we agree with the district court that these facts suggest that Kane County rescinded the Ordinance in a deliberate attempt to render the pending litigation moot, and it seems poised to reenact a similar ordinance. We appreciate the

---

[9] Statutes and ordinances are treated equally under this rule. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982).

commissioners' candor, but they cannot so easily moot environmental plaintiffs' claims.

In addition to rescission, Kane County relies on its removal of OHV decals—and in some instances, entire signs—as a basis for mootness. According to the County, "[t]here is no longer any local government authorization for OHV's to travel 'federal land' in Kane County." However, there is no dispute that several county road signs remained on disputed routes at the time of judgment. The presence of these signs indicates to the public that the roads are open to vehicle traffic. Accordingly, the alleged conflict between Kane County's actions and federal law continues. As with respect to redressability, we determine that removal of the remaining county road signs would likely cause at least one person to refrain from driving OHVs on the disputed routes. Because enforcement of the district court's order will afford plaintiffs effective relief, this case is not constitutionally moot. See Kan. Judicial Review, 562 F.3d at 1246.

**B**

Even if this case is not constitutionally moot, Kane County argues that it is prudentially moot. Under the prudential mootness doctrine, a court may dismiss a case that remains constitutionally viable if "prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." S. Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997). The factual inquiry under this doctrine is largely the same

as that for constitutional mootness: "[H]ave circumstances changed since the beginning of the litigation that forestall any occasion for meaningful relief[?]" Id. "A court may refuse to grant relief where it appears that a change in circumstances renders it highly unlikely that the actions in question will be repeated." Fletcher v. United States, 116 F.3d 1315, 1321 (10th Cir. 1997).

Because the central inquiries are the same, we need not retread our earlier analysis at length. The record indicates that there exists a reasonable probability the Ordinance will be reenacted. For that reason, we cannot say that "it [is] highly unlikely that the actions in question will be repeated." Id. We are unpersuaded that we should discretionarily refrain from deciding this case, properly before us, in which effective redress can be afforded.

## IV

### A

Kane County claims further that the environmental plaintiffs lack a cause of action. Although the County styles this contention as a question of standing, it is mistaken in such framing. The existence of a private right of action is a separate and distinct issue. See Dohaish, 670 F.2d at 936-37 ("It is not unusual for standing and the cause of action . . . to be confused. Both the question of standing and the question of legal sufficiency of the action focus on the nature of the plaintiff's injury and the nature of the invasion of his alleged right but different considerations underlie the two concepts." (citation omitted)); see also

Nw. Airlines, Inc. v. County of Kent, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional.").

Kane County relies on Day v. Bond, 511 F.3d 1030 (10th Cir. 2007) (order denying reh'g), to argue that the Supremacy Clause does not supply a cause of action. In that case, we explained that the "unique nature of the injury [plaintiffs] asserted in relation to their preemption claim" required us to analyze whether the statute allegedly preempting the actions at issue conferred a private right of action. Id. at 1032. The only form of injury alleged in Day was "invasion of a putative statutory right conferred on them by [the relevant statute]." Id. We were thus required to decide whether the statute created private rights to determine whether plaintiffs had been injured.

Because of the unique injury alleged in Day, this authority offers little guidance. The environmental plaintiffs do not allege a statutory injury. Instead they claim harm to their recreational and other interests caused by unlawful OHV use. Qwest Corp. v. City of Santa Fe, 380 F.3d 1258 (10th Cir. 2004), provides a better analogy. As we held there, in most cases, private litigants may bring a suit directly under the Supremacy Clause without establishing an associated statutory right of action. Id. at 1266;[10] accord Shaw v. Delta Air Lines, Inc., 463 U.S. 85,

_____

[10] In so holding, we are in agreement with a majority of the circuits. See e.g., Indep. Living Ctr. of S. Cal., Inc. v. Shewry, 543 F.3d 1050, 1060 (9th Cir. 2008) (holding that "a state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights

(continued...)

96 n.14 (1983). We explained in <u>Day</u> that <u>Qwest Corp.</u> remains good law. <u>See</u> 511 F.3d at 1033. Accordingly, Kane County's assertion that the environmental plaintiffs lack a cause of action is misguided.

The dissent attempts to distinguish <u>Qwest</u> and <u>Shaw</u> on the ground that the plaintiffs in those cases were "raising preemption as a <u>defense</u> to the enforcement against themselves of state regulations that conflicted with federal law." (Dissenting Op. 16.) But this is a distinction without a difference. In <u>Qwest</u>, we held that a "party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action." 380 F.3d at 1266. Similarly, in <u>Shaw</u>, the Supreme Court held that a plaintiff who seeks an injunction on preemption grounds raises a federal question claim that federal courts have jurisdiction to resolve. 463 U.S. at 96 n.14. Neither case suggests its holding is limited to plaintiffs raising preemption as a defense. Rather, in both <u>Qwest</u> and <u>Shaw</u>, as here, plaintiffs brought suit directly under the Supremacy Clause to relieve injuries caused by an allegedly preempted enactment.

---

[10](...continued)
for the party arguing preemption"); <u>Local Union No. 12004 v. Massachusetts</u>, 377 F.3d 64, 75 (1st Cir. 2004) (holding that "in suits against state officials for declaratory and injunctive relief, a plaintiff may invoke the jurisdiction of the federal courts by asserting a claim of preemption, even absent an explicit statutory cause of action"); <u>Vill. of Westfield v. Welch's</u>, 170 F.3d 116, 124 n. 4 (2d Cir.1999) (holding that causes of action under the Supremacy Clause "do not depend on the existence of a private right of action under the [preempting statute].").

**B**

Related to their cause of action argument, Kane County contends that the
environmental plaintiffs lack prudential standing because: (1) they are asserting
the legal rights of the United States; (2) their claims raise generalized grievances;
and (3) their claims fall outside the zone of interest protected by the Supremacy
Clause. We reject each assertion.

As discussed above, see Part II, supra, the environmental plaintiffs allege
that their members have been injured; they do not rely on any harm flowing to the
United States. Similarly, they do not raise a generalized grievance, but rather one
that particularly impacts their members. As the Ozarski and Thomas declarations
establish, members of the environmental plaintiff organizations use areas within
earshot of the disputed roads for recreational purposes. These members'
enjoyment of the lands in question are harmed by Kane County's allegedly
preempted activities.

Kane County's zone of interest argument fares no better. If the zone of
interest test applies in a preemption case,[11] it is clear that the environmental

---

[11] More than twenty years ago, we assumed without deciding that the zone
of interest test applied in a preemption case. See ANR Pipeline Co. v. Corp.
Comm'n of Okla., 860 F.2d 1571, 1579 (10th Cir. 1988). More recent authority
from other circuits holds that the zone of interest test is inapplicable in such a
case. See Taubman Realty Group Ltd. P'ship v. Mineta, 320 F.3d 475, 481 n.3
(4th Cir. 2003); Pharm. Research & Mfrs. of Am. v. Concannon, 249 F.3d 66, 73
(1st Cir. 2001); St. Thomas—St. John Hotel & Tourism Ass'n v. Gov't of U.S.
Virgin Islands, 218 F.3d 232, 241 (3d Cir. 2000). One scholar argues that the

(continued...)

- 29 -

plaintiffs fall within the zone of interest protected by the Supremacy Clause. See

Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 492

(1998) (defining the zone of interest inquiry as "whether the interest sought to be

protected by the complainant is arguably within the zone of interests to be

protected by the statute" (quotation and ellipses omitted)), superseded by statute

on other grounds, Credit Union Membership Access Act, Pub. L. No. 105-219,

§ 2, 112 Stat. 913, 913 (1998). The Supremacy Clause is at least arguably

designed to protect individuals harmed by the application of preempted

enactments. Accordingly, the environmental plaintiffs have prudential standing.

## V

Kane County also brings to us the contention that both the State of Utah

and the United States are necessary and indispensable parties to this litigation,

and that therefore the district court erred in denying its motions to dismiss. A

district court's Rule 19 determinations are reviewed for abuse of discretion, with

---

[11](...continued)
zone of interest test in the constitutional context is redundant of the third-party
standing inquiry. 1 Laurence H. Tribe, American Constitutional Law 446 (3d ed.
2000) ("Properly conceived, the zone-of-interest inquiry is part of third-party
standing analysis: to say that a particular plaintiff's claim does not fall within the
zone of interests of a given constitutional provision is another way of saying that
the right claimed is one possessed not by the party asserting it . . . .").
   Although applicability of the zone of interest test was decided below and
briefed on appeal, we need not decide the issue here. To the extent the zone of
interest test applies, the relevant zone of interest is that of the Supremacy Clause
and not of the allegedly preempting federal statute. See ANR Pipeline, 860 F.2d
at 1579.

any underlying legal conclusions reviewed de novo.  <u>Symes v. Harris</u>, 472 F.3d 754, 759 (10th Cir. 2006).

The Rule 19 analysis proceeds in two steps:  (1) necessity; and (2) indispensability.  Only necessary parties can be indispensable parties.  <u>See</u> Fed. R. Civ. P. 19(b); <u>Davis ex rel. Davis v. United States</u>, 343 F.3d 1282, 1288-89 (10th Cir. 2003).  A non-party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Kane County does not advance an argument under Rule 19(a)(1)(A), and we see no basis for it to do so.  Because Kane County did not present any cross- or counterclaims, only the environmental plaintiffs were seeking relief from the district court.  That relief was fully afforded by the district court's injunction.  Thus, the necessity determination turns on whether either government "claims an interest relating to the subject of the action" and satisfies the remainder of 19(a)(1)(B).  Even persons with an undisputed interest in the outcome of the action may not be necessary if their interests are "virtually identical" to those of

an already present party.  Kansas v. United States, 249 F.3d 1213, 1226-27 (10th Cir. 2001).

We agree with the district court's conclusion that the State of Utah is not a necessary party.  Kane County argues that Utah's interests were necessarily implicated because the district court decided ownership of the disputed roads.  That is a patent misreading of the district court's decisions; the court took great pains to clarify that it was not passing on the validity of any alleged R.S. 2477 rights of way.  Moreover, Utah's interest in controlling disputed roadways is virtually identical to that of Kane County.  That the State's interests might be slightly broader in geographic scope is immaterial because this case concerns only those routes within Kane County's borders.

Kane County argues that "the United State [sic] is a necessary party in a case that would decide whether Kane County owns public highway rights-of-way on federal land."  That seems a sensible proposition, but it does not apply here.  The district court clearly and repeatedly noted that it was not passing on the validity of any R.S. 2477 rights.  In its order denying Kane County's first motion to dismiss, the court agreed with the environmental plaintiffs that it "need not make any final determination regarding the existence of any R.S. 2477 right-of-way in order to grant TWS's requested relief."  In its order granting summary judgment in favor of the environmental plaintiffs, the court again explained that it "does not need to make an R.S. 2477 determination to decide the preemption

issue." The ordered injunction applies only "unless and until Kane County proves in a court of law that it possesses a right-of-way to" the disputed routes. Finally, in its order denying Kane County's motion to stay the injunction, the court repeated that its ruling only enjoined "County action that purports to manage or open to vehicle use <u>any route or area closed to such use by governing federal land management plan or federal law</u>." Thus, the fatal flaw in Kane County's argument, and in the dissent's suggestion, that the United States is necessary is that this is not a case "that would decide whether Kane County owns . . . rights-of-way on federal land."[12]

Further, the district court was correct to reject Kane County's attempt to establish R.S. 2477 rights in this case.[13] The district court identified two defects

---

[12] Claiming that "the district court was wrong to hold that the lack of prior judicial adjudication means that a county right-of-way is not a 'valid existing right,'" the dissent makes the same mistake. (Dissenting Op. 24.) As explained above, the district court went to great lengths to make clear it was not determining the validity of the County's claims to R.S. 2477 rights. It simply held that Kane County must prove the existence and scope of such rights before exercising them unilaterally.

Interestingly, the dissent recognizes the County's burden. (Dissenting Op. 24 ("This does not mean, of course, that mere claims of rights-of-way are tantamount to title. In the event of controversy over particular claimed routes, raised by parties with standing and a cause of action, the county bears the burden of proving it has a right-of-way.")) The dissent merely refuses to acknowledge that Kane County acted unilaterally in removing federal signs and replacing them with county signs allowing OHV use in direct contradiction of federal law.

[13] It is unclear whether Kane County is seeking to challenge this ruling in its Opening Brief. It notes that it attempted to prove ownership of rights of way over Skutumpah and Windmill Roads but advances no substantive argument on

(continued...)

in Kane County's request: (1) Kane County did not file a Quiet Title Act claim, and (2) the environmental plaintiffs were not the proper parties to sue to quiet title. We are in accord with the district court's first observation, making it unnecessary for us to address the second.

As a limited waiver of sovereign immunity, the Quiet Title Act is the sole avenue by which Kane County can seek to prove the existence of its R.S. 2477 rights in court.[14] See Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983) (holding that the Quiet Title Act is "the exclusive means by which adverse claimants [may] challenge the United States' title to real property." (footnote omitted)); Sw. Four Wheel Drive Ass'n v. BLM, 363 F.3d 1069, 1071 (10th Cir. 2004) (citing Block for the proposition that the Quiet Title Act provides the sole avenue for proving R.S. 2477 rights). Although Kane County does not directly challenge the district court's ruling regarding the Quiet Title Act, read rather generously, its brief does suggest that the district court's conclusion contravenes SUWA v. BLM. In that case, we remanded for the district court to adjudicate the validity of purported R.S. 2477 rights without even mentioning the Quiet Title Act. 425 F.3d at 788. Given the clear holding in

_____

[13](...continued)
this point. We give Kane County the benefit of the doubt and address this argument despite potentially inadequate briefing.

[14] We do not foreclose any non-judicial avenues such as seeking congressional recognition of a FLPMA right of way or reaching agreement with the BLM as to the existence of certain rights.

<u>Block</u>, we decline to read <u>SUWA v. BLM</u> as establishing a contrary rule by implication. Because a Quiet Title Act claim was not filed in this case,[15] the validity of purported R.S. 2477 rights of way over federal land could not have been adjudicated. Rejecting Kane County's sole argument to the contrary, we affirm the district court's ruling that the United States is not a necessary party.

**VI**

We are now able to turn to the merits of the district court's preemption ruling. At the core of this case is a dispute over what it means to manage lands "subject to valid existing rights" in the absence of an adjudication of such rights. Resolution pivots around who moves first. In other words, is county regulation of alleged but unproven R.S. 2477 rights preempted when the local regulation conflicts with the federal, or are counties free to regulate such routes prior to adjudication? That is the question that Kane County raises on appeal.[16]

As noted, this appeal follows a grant of summary judgment in favor of the environmental plaintiffs. Grants of summary judgment are reviewed de novo, applying the same standard as the district court. <u>Utah Animal Rights Coal. v. Salt Lake County</u>, 566 F.3d 1236, 1242 (10th Cir. 2009). We ordinarily consider both

---

[15] As it does itself, the dissent argues that Kane County "loudly and repeatedly sought an opportunity to prove its claims in district court, but was rebuffed." (Dissenting Op. 29.) Yet Kane County never advanced a Quiet Title Act claim below.

[16] Kane County does not challenge the district court's denial of its Rule 56(f) motion or the court's denial of its motion for partial summary judgment.

whether there was a disputed issue of material fact and whether the movant was entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Kane County, however, does not claim that it created a disputed issue of material fact below; it challenges only the district court's legal conclusion that Kane County regulation of alleged R.S. 2477 rights is preempted unless and until the validity of such rights is proven. Accordingly, we need only consider the second of the two summary judgment inquiries—whether the environmental plaintiffs were entitled to judgment as a matter of law.

## A

In SUWA v. BLM, we held that "the burden of proof lies on those parties seeking to enforce rights-of-way against the federal government." 425 F.3d at 768 (quotation omitted). "This allocation of the burden of proof to the R.S. 2477 claimant," we noted, "is consonant with federal law and federal interests." Id. at 769. Indeed, it has long been the law that land "grants must be construed favorably to the government and that nothing passes but what is conveyed in clear and explicit language—inferences being resolved not against but for the government." Caldwell v. United States, 250 U.S. 14, 20 (1919); see Watt v. W. Nuclear, Inc., 462 U.S. 36, 59 (1983) (same) (quoting United States v. Union Pac. R.R. Co., 353 U.S. 112, 116 (1957)). This allocation of the burden of proof is also consonant with Utah law. See SUWA v. BLM, 425 F.3d at 768 ("Under Utah law determining when a highway is deemed to be dedicated to the use of the

public, 'the presumption is in favor of the property owner; and the burden of establishing public use for the required period of time is on those claiming it.'" (quoting Leo M. Bertagnole, Inc. v. Pine Meadow Ranches, 639 P.2d 211, 213 (Utah 1981)) (footnote and alteration omitted)). Accordingly, "[c]ounties, as the parties claiming R.S. 2477 rights, bear the burden of proof." SUWA v. BLM, 425 F.3d at 769.

The district court relied on the allocation of this burden in determining that the Ordinance and Kane County's signage program were preempted. Although it acknowledged that each of the relevant management regimes may not encroach upon "valid existing rights," the court concluded—based primarily on Kane County's discovery admissions—that R.S. 2477 rights of way had not yet been established in a court of law. Based on the "presumption on federal land . . . that ownership and management authority lies with the federal government,"[17] the court ruled that Kane County "is not entitled to win title or exercise unilateral management authority until it successfully has carried its burden of proof in a court of law."

We agree with the district court's conclusion. Kane County's only substantive defense is that it possesses valid R.S. 2477 rights of way over the routes in question. Under that theory, there can be no preemption because the

---

[17] The dissent explicitly acknowledges this presumption, stating: "The federal government owns the land, and has the presumptive right to regulate activities that takes place on it." (Dissenting Op. 26.)

federal management regimes are explicitly made subject to valid existing rights. But Kane County cannot defend a preemption suit by simply alleging the existence of R.S. 2477 rights of way; it must prove those rights in a court of law, see SUWA v. BLM, 425 F.3d at 769, or obtain some other recognition of such rights under federal law.

Kane County contends that this allocation contravenes the general rule that a party claiming preemption bears the burden of proof. See Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 489 n.4 (10th Cir. 1998). The environmental plaintiffs, however, carried their burden of proof. As discussed in Part VI.B, infra, they established that federal law prohibited OHV use on the lands in question (absent proven valid existing rights) and that Kane County's actions violated those mandates.

We considered where to place such a burden under an analogous scheme in Qwest Corp. In that case, Qwest claimed that a Santa Fe ordinance regulating telecommunications provider access to city rights of way was preempted by 47 U.S.C. § 253. Qwest Corp., 380 F.3d at 1262. The statute at issue there contains an express preemption clause but specifically permits local governments "to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way." § 253(c). We held that Santa Fe, the party asserting this "safe harbor" provision as a defense to federal preemption, bore the burden of proof as

to that defense.  Qwest Corp., 380 F.3d at 1272 n.10; see also Level 3 Commc'ns, L.L.C. v. City of St. Louis, 477 F.3d 528, 532 (8th Cir. 2007) ("Thus, section 253(a) states the general rule and section 253(c) provides the exception—a safe harbor functioning as an affirmative defense—to that rule." (citations omitted)); BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1187 (11th Cir. 2001) ("[S]ubsections (b) and (c) [of § 253] are 'safe harbors,' functioning as affirmative defenses to preemption of state or local exercises of authority that would otherwise violate (a).").

Just as in Qwest Corp., the plaintiffs in this case bore the burden of proving a conflict between federal and local regulations.  Once they did so, defendants bore the burden of demonstrating that their actions fell within a limited carve-out to the preempting federal provisions.  Under this sensible apportionment of the burdens of proof, Kane County was required to prove that its alleged R.S. 2477 rights of way had been adjudicated as "valid existing rights."

Attempting to meet this burden, Kane County simply reasserts that its R.S. 2477 rights are valid.  It focuses on our statement in SUWA v. BLM that "the establishment of R.S. 2477 rights of way required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested."  425 F.3d at 741.  But creation and vestment of R.S. 2477 rights is not at issue here.  Instead, we must determine whether Kane County can

exercise management authority before it proves that it has R.S. 2477 rights of way. Its claimed rights may well have been created and vested decades ago, but until it proves up those rights, we agree with the district court that its regulations on federal lands that otherwise conflict with federal law are preempted.[18]

The dissent contends that this ordering rule conflicts with our previous decision in SUWA v. BLM. (See Dissenting Op. 21.) This is not the case. In SUWA v. BLM, BLM argued that consultation with the agency was required before the Counties could grade or realign the roads "whether or not the Counties [had] a valid R.S. 2477 right of way on those routes." 425 F.3d at 745. The dissent takes its quote from a section analyzing this argument, which proceeded "on the heuristic assumption that [the Counties] own[ed] a valid right of way." Id. The environmental groups make no such concession.[19]

_____

[18] In attempting to set up a straw man, Kane County dramatically overstates the scope of the district court's ruling. It asserts that the district court "eject[ed] the government from its historic public highway rights-of-way and lawful governmental authority on roughly 2 million acres of land." (The dissent resorts to similar rhetoric, claiming that the district court's decision and the majority opinion "wreak[] havoc with the transportation system of the West" (Dissenting Op. 7.) In light of the district court's repeated admonitions that it was not deciding the validity of any R.S. 2477 rights, see Part V, supra, we reject Kane County's contention.

[19] The dissent also argues that our decision conflicts with Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir. 1988). In that case, BLM and Garfield County had entered into a memorandum of understanding that the disputed roadway was "a county road rather than a road used primarily for the management of public lands." Sierra Club v. Hodel, 675 F. Supp. 594, 605 (D. Utah 1987).

(continued...)

Similarly, the dissent's contention that the Ordinance and the Monument Plan "neatly dovetail," (Dissenting Op. 20.), ignores the facts of this case. Because of the unique nature of the Ordinance, some factual background is necessary to understand its scope. It purported to give Kane County authority to adopt a map or "post signs designating lands, trails, streets, or highways open to OHV use." Accordingly, we must consider the actual signs in determining which roads are covered by the Ordinance. It is undisputed that Kane County posted signs on roads in areas designated by federal regulations as closed to vehicle traffic. Only by improperly viewing the Ordinance in a vacuum can the dissent claim it does not conflict with federal law.

The dissent's second merits contention suffers the same defect. In many instances, we would not say that a less restrictive state enactment was preempted by a more restrictive federal regime. But one must bear in mind that Kane County did not simply "make OHV travel permissible as far as the county is concerned." (Dissenting Op. 26.) Rather, Kane County removed federal signs that forbid OHV use and replaced them with County signs permitting OHV use

[19](...continued)
Accordingly, the proper ordering of proof was not at issue; no conflict existed between federal and local regulations. We must decide the proper ordering only in the case of a conflict. In its order denying Kane County's motion to stay the injunction, the court repeated that its ruling only enjoined "County action that purports to manage or open vehicle use [on] <u>any route or area closed to such use by governing federal land management plan or federal law</u>." (Emphasis added).

pursuant to the Ordinance. The suggestion that implementation of the Ordinance was not in conflict with federal law departs from reality.

## B

Having affirmed the district court's pivotal holding, there remains yet another question, whether federal law conflicts with the Ordinance and Kane County's signage program.[20] The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Although Congress may regulate land under the Property Clause, U.S. Const. art. IV, § 3, cl. 2, "[t]he Property Clause itself does not automatically conflict with all state regulation of federal land." Cal. Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 580 (1987). The specific question we must answer is "whether Congress has enacted legislation respecting this federal land that would pre-empt" state or local regulation. Id. at 581. Local ordinances and state laws stand on equal footing in the preemption analysis. Wisc. Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991).

---

[20] Kane County does not clearly contest the district court's conclusion that various federal statutes and regulations conflict with the Ordinance, other than to argue that such rules do not apply to unproven R.S. 2477 rights. Out of an abundance of caution, we nevertheless consider this issue.

Four different management regimes govern the four distinct areas at issue

in this appeal. We hold that OHV use was forbidden on each parcel.

**1**

Grand Staircase-Escalante was established by presidential proclamation.

Proclamation No. 6920, 61 Fed. Reg. 50,223 (Sept. 18, 1996). In establishing the

Monument, President Clinton explained:

> [T]his unspoiled natural area remains a frontier, a quality that greatly
> enhances the monument's value for scientific study. The monument
> has a long and dignified human history: it is a place where one can
> see how nature shapes human endeavors in the American West, where
> distance and aridity have been pitted against our dreams and courage.
> The monument presents exemplary opportunities for geologists,
> paleontologists, archeologists, historians, and biologists.
> . . . .
> . . . Remoteness, limited travel corridors and low visitation have all
> helped to preserve intact the monument's important ecological values.
> The blending of warm and cold desert floras, along with the high
> number of endemic species, place this area in the heart of perhaps the
> richest floristic region in the Intermountain West.

Id. at 50,223-24.

Included in the Monument Plan that governs land use in Grand Staircase-

Escalante is a map known as Map 2. Map 2 includes all roads open to traffic

within the Monument. Monument Plan 46. Unlisted roads are closed, "subject to

valid existing rights." Id. Clarifying that language, the Monument Plan explains:

> Some government entities may have a valid existing right to an access
> route under Revised Statutes (R.S.) 2477, Act of June 26, 1866, ch.
> 262, § 8, 14 Stat. 251 [codified as amended at 43 U.S.C. § 932 until
> repealed in 1976 by the Federal Land Policy and Management Act of
> 1976 (FLPMA), Public Law 94-579, Section 706(a), Stat. 2744, 2793

- 43 -

(1976)], which granted "[the right-of-way for the construction of highways over public lands, not reserved for public uses.]" As described in the United States Department of Interior, Report to Congress on R.S. 2477 (June 1993), claims of rights-of-ways under R.S. 2477 are contentious and complicated issues, which have resulted in extensive litigation. See e.g, Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir. 1988); Southern Utah Wilderness Alliance v. Bureau of Land Management, Consolidated Case No. 2:96-CV-836-S (D. Utah, filed Oct. 3, 1996, pending). It is unknown whether any R.S. 2477 claims would be asserted in the Monument which are inconsistent with the transportation decisions made in the Approved Plan or whether any of those R.S. 2477 claims would be determined to be valid. To the extent inconsistent claims are made, the validity of those claims would have to be determined. If claims are determined to be valid R.S. 2477 highways, the Approved Plan will respect those as valid existing rights. Otherwise, the transportation system described in the Approved Plan will be the one administered in the Monument.

Id. at 46 n.1 (emphasis added, brackets in original). "Beyond the routes shown on

Map 2, the BLM will work with any individual operating within the Monument

under existing permits or authorizations to document where access must continue

in order to allow operation of a current permit or authorization." Id. at 48. The

Monument Plan further specifies that

> [n]othing in this Plan alters in any way any legal rights the Counties of Garfield and Kane or the State of Utah has to assert and protect R.S. 2477 rights, and to challenge in Federal court or other appropriate venue, any BLM road closures that they believe are inconsistent with their rights.

Id. at 46 n.1.[21]

---

[21] We recently held that BLM was not required to determine the validity of R.S. 2477 rights of way prior to promulgating the Monument Plan. Kane County v. Salazar, 562 F.3d 1077, 1086-87 (10th Cir. 2009).

Based on the plain language of the Monument Plan, it is clear that until an R.S. 2477 right of way is adjudicated, Map 2 governs.[22]  It is equally clear that Map 2 does not permit OHV use on routes opened by the Ordinance and signed by Kane County except as to routes that appear on Map 2.  Moreover, Kane County conceded below that the Ordinance opened routes within the Monument that do not appear on Map 2 and that these claimed R.S. 2477 rights of way had not been proven in a court.[23]  For those reasons, we agree with the district court that county

---

[22] While we acknowledge that R.S. 2477 rights may well have vested without procedural formalities, SUWA v. BLM, 425 F.3d at 741, as did the district court, we do not pass on the validity of such rights.  We address only the state of affairs absent adjudication.

[23] Although Kane County asserted below that Skutumpah road had been judicially determined a valid R.S. 2477 right, the district court did not agree and found that no R.S. 2477 rights on the land in question had yet been proven.  We agree with the district court that Skutumpah road was not adjudicated in SUWA v. BLM.  In that case, the district court relied on a BLM determination that Skutumpah Road was indeed an R.S. 2477 right of way.  425 F.3d at 743-44.  We held that "nothing in the terms of R.S 2477 gives the BLM authority to make binding determinations on the validity of the rights of way granted thereunder," and thus the district court erred by crediting the agency's determination.  Id. at 757.  We thus remanded to the district court to conduct a de novo proceeding.  Id. at 788.  Following remand, however, the case was dismissed for lack of subject matter jurisdiction.  S. Utah Wilderness Alliance v. BLM, 2006 U.S. Dist. LEXIS 66808 (D. Utah Aug. 30, 2006) (unpublished order).
Kane County seizes on the final line of our opinion, in which we remanded to the district court to determine "whether Kane County exceeded the scope of its right of way with respect to the Skutumpah Road." SUWA v. BLM, 425 F.3d 788.  But this single line cannot be twisted into a final adjudication.  It simply reflects the fact that BLM had taken the position that the Skutumpah Road was an R.S. 2477 right of way.

regulation of routes not indicated on Map 2 is preempted unless and until such routes are judicially proven as valid R.S. 2477 rights.

**2**

Established by statute in 1972, Glen Canyon NRA spans more than 1.25 million acres in northern Arizona and southeastern Utah.  § 3(a), 86 Stat. at 1312. It is closed in large measure to OHV travel, but those closures too are subject to valid existing rights.  See 36 C.F.R. § 4.10(b) (establishing closure to OHV travel absent a special regulation permitting such use); § 3(a), 86 Stat. at 1312 (requiring management subject to valid existing rights).

In arguing that OHV use is permitted in Glen Canyon NRA, Kane County relies on a federal regulation which interstitially applies state law to roads within the recreation area.  See 36 C.F.R. § 4.2(a) ("Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law.").  Kane County further relies on a memorandum authored by BLM Acting Regional Solicitor of the Intermountain Region, Lawrence J. Jensen ("the Jensen memorandum").  We agree with Kane County that the Jensen memorandum is entitled to Skidmore deference.  See Christensen v. Harris County, 529 U.S. 576, 587 (2000).  Nonetheless, we conclude that the memorandum does not carry the load Kane County places upon it.

The Jensen memorandum states that 36 C.F.R. § 4.10 "does not 'specifically address' the use of [OHVs] on park roads for purposes of section

4.2, and that state law therefore governs such use." However, it cabins that determination to "those roads for which the county is 'the controlling authority' under state law." It further notes that under Utah law, the question of whether a county is the "controlling authority" may depend on the existence of valid R.S. 2477 rights of way. In this case, Kane County's power to regulate OHV use within Glen Canyon NRA turns on the existence of valid R.S. 2477 rights. As discussed above, see Part VI.A, supra, Kane County may not unilaterally manage alleged R.S. 2477 routes until it first proves it has such rights and is not expanding the scope of use in a court of law. It is undisputed that such rights have not been established within Glen Canyon NRA, thus neither 36 C.F.R. § 4.2(a) nor the Jensen memorandum confers management authority upon Kane County.

Because there was no special federal regulation allowing OHV use in Glen Canyon NRA when this case was filed,[24] and because Kane County has not yet

---

[24] Although there were no special regulations when this litigation commenced, some portions of Glen Canyon NRA are now open to OHV use. Bureau of Land Mgmt., U.S. Dep't of the Interior, Record of Decision and Approved Resource Management Plan, Map 15 (2008), available at http://www.blm.gov/ut/st/en/fo/richfield/planning/rmp/rod_approved_rmp.html. Because Kane County does not rely on this newly adopted management plan in its briefing, and because there is no evidence in the record regarding the overlap between the 1996 Map and the new plan, we have no basis to conclude that the new plan has mooted any portion of this case. See Kan. Judicial Review, 562 F.3d at 1245 (party claiming mootness bears the burden of demonstrating it).

established that it possesses R.S. 2477 rights of way across the recreation area, federal rules prohibit OHV use. See 36 C.F.R. § 4.10(b) (OHV use not allowed absent a special regulation). Accordingly, unless and until Kane County establishes its R.S. 2477 rights of way, the Ordinance and Kane County's such signage actions within Glen Canyon NRA are preempted.

**3**

Similar principles govern our analysis of preemption in Moquith Mountain WSA. Moquith Mountain was designated a wilderness study area in 1980. Utah; Final Wilderness Inventory Decision, 45 Fed. Reg. 75,602, 76,602-03 (Nov. 14, 1980). It must be managed "so as not to impair the suitability of such areas for preservation as wilderness." 43 U.S.C. § 1782(c). In 2000, BLM made permanent its closure to OHV use of 95% of the roads in Moquith Mountain WSA. Bureau of Land Mgmt., U.S. Dep't of the Interior, Vermilion Management Framework Plan Amendment, Approved Amendment and Decision Record (Aug. 18, 2000), available at http://www.ut.blm.gov/CoralPink/nraug21crldecision.html.

Although Moquith Mountain WSA must be managed pursuant to FLPMA's "subject to valid existing rights" requirement, see 43 U.S.C. § 1782(c); § 701(h), 90 Stat. at 2786, as we held in Part VI.A, supra, this carve out does not come into play for use or signage inconsistent with the federal plan on alleged R.S. 2477 routes unless and until those routes are adjudicated valid. Kane County's actions permitting OHV use within Moquith Mountain were thus preempted.

**4**

Paria Canyon, a designated wilderness area, is essentially closed to motor vehicle use. 16 U.S.C. § 1133 (closing wilderness areas to motor vehicle use "except as necessary to meet minimum requirements for the administration of the area"); Arizona Wilderness Act of 1984, § 301(a)(7) (designating the wilderness area). That closure too is "subject to valid existing rights," § 302(a), 98 Stat. at 1493, but Kane County concedes it has not judicially proven R.S. 2477 rights of way within Paria Canyon. As with the other areas implicated in this dispute, Kane County was accordingly preempted from exercising management authority in Paria Canyon inconsistent with federal regulation.[25]

**VII**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[25] Kane County also contests on appeal the denial of its motion to strike certain exhibits. We review the denial of the motion to strike for abuse of discretion. See United States v. Fuentez, 231 F.3d 700, 705 (10th Cir. 2000). Kane County presents no argument suggesting that the district court's decision declining to consider the challenged evidence (and thus to render the motion moot) was improper, preferring instead to argue the substantive admissibility of the challenged exhibits. We discern no abuse of discretion in such a procedure.

In the section of its opening brief challenging denial of the motion to strike, Kane County asserts that the district court also erred in denying its request for attorneys' fees. No further explanation of that statement is provided, and we thus do not consider its merits. See Habecker, 518 F.3d at 1223 n.6 (quotation omitted).

*Wilderness Society v. Kane County*, 08-4090,

**McCONNELL**, J., dissenting.


A great many of the roads of the West, including virtually all the roads that provide visitors access to the Grand Staircase-Escalante National Monument in southern Utah [hereinafter "the Monument"], are based upon rights-of-way established under the authority of a congressional statute passed in 1866, popularly called "R.S. 2477."  When the plaintiffs' members testify that they enjoy recreating in "areas adjacent to the Hole-in-the Rock road, Hackberry Canyon, Buckskin Gulch, Paria Canyon and the White House Campground," Maj. Op. 15, they travel to those places over R.S. 2477 roads.  Kane County and its counterparts maintain these roads to keep them safe and passable; the Counties set and enforce speed limits and other rules of the road; they provide search and rescue services to visitors in trouble; all this is done through the exercise of rights obtained under R.S. 2477.

None of the R.S. 2477 roads in Kane County, and precious few in the rest of Utah or the West, have ever been proven or established in court.  That has never been necessary.  For more than 150 years, R.S. 2477 routes have been regarded as vested property rights, based solely upon continuous public use across unreserved federal land for the requisite number of years prior to 1976.  As this court explained in *Southern Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 754 (10th Cir. 2005) [hereinafter "*SUWA*"], rights-of-way were "established" and

"legal title . . . passed" on the basis of public use, "without any procedural formalities" and with "no notice or filing requirements of any kind." *Id.* at 753-54.

When the Monument was created, President Clinton's Executive Order expressly made federal land management "subject to valid existing rights," and regulations under the Federal Land Policy Management Act ("FLPMA") prohibit any diminishment of the rights-of-way granted by R.S. 2477. 43 C.F.R. §§ 2801.4, 2801.6. The Monument Plan itself contains a section entitled "Transportation and Access," which designates a route system for the Monument in the form of a transportation map. The Plan states: "Any route not shown on Map 2 is considered closed upon approval of this Plan, *subject to valid existing rights*." Grand Staircase-Escalante National Monument Management Plan at 46, *available at* http://www.blm.gov/ut/st/en/fo/grand_staircase-escalante/planning/ monument_management.html (last visited Aug. 19, 2009) (emphasis added). Neither the Executive Order nor the Monument Plan thus purports to limit or extinguish valid existing R.S. 2477 rights; rather, federal land management within the Monument is explicitly "subject to" those existing rights.[1]

_____

[1] I focus here on the dispute over roads within the Monument. Kane County does not assert any interest within the Paria Canyon-Vermillion Cliffs Wilderness Area (Aplnt's Br. 33), and the only road at issue within the Moquith Mountain Wilderness Study Area, the so-called "Windmill Road," is a special case involving access to a particular private landowner's property. *Id.* at 36. The

(continued...)

This case involves Kane County Ordinance 2005-03, repealed in 2007,[2] which permitted OHV travel on Kane County Class B and Class D roads. The Ordinance made no special reference to the Monument or to federal land, but applied generally to all county roads of that description. The Ordinance did not incorporate any map, and does not make any claim, implicitly or explicitly, to ownership of any particular rights-of-way over federal land. Neither the complaint nor the answer identifies any particular roads over which Kane County claims an R.S. 2477 right-of-way that the BLM has ordered closed,[3] and the federal government has made no attempt to determine which roads across the Monument traverse valid, or invalid, R.S. 2477 rights-of-way. *See Kane County v. Salazar*, 562 F.3d 1077, 1086 (10th Cir. 2009). According to a letter from the Monument Manager to his staff, which is part of the record: "Roads closed in the

[1](...continued)
principles discussed in this dissent are equally applicable to Glen Canyon National Recreation Area. *See* Pub. L. No. 92-593, Sec. 3(a), 86 Stat. 1311, 1312 (1972) (establishing Glen Canyon NRA "subject to valid existing rights").

[2] The Ordinance has been repealed and the County's specific acts with respect to signage were in the past, which raises the question of mootness. I have serious reservations about the majority's holding that this case is not moot, and especially its decision not to employ the flexible doctrine of prudential mootness to avoid this wholly unnecessary federal court intrusion into the relations between a local government and federal land managers. But I will focus on what I regard as the more serious legal errors: the plaintiffs' lack of standing, the absence of a cause of action, and the erroneous application of preemption principles.

[3] In district court, Kane County asserted ownership of rights over the Skutumpah Road and the Windmill Road, but neither of these roads has been closed by the BLM.

[Plan] but are County R.S. 2477 claims — This is not considered cross country use. We are not implementing or enforcing these closures until resolution of all the legal issues sometime in the next century." App. 1914.

The case also involves two disputes over signage. The facts are murky and were not adjudicated below, but apparently on one occasion in 2003, roughly two years before this lawsuit was filed, Kane County officials removed signs that had been placed along putative county roads by the federal land managers. This appears to have been some sort of protest. It has not been repeated. In addition, in 2005 the County erected a number of road signs within the Monument, some of which contained decals indicating that the roads were open to off-road-vehicle use. It is unclear whether the signs were new or were merely replacements for longstanding county road signs. According to evidence submitted by the plaintiffs, the BLM Director wrote a letter to the County objecting to these signs, App. 425-26, 1702-04, and the County removed first the decals and later the signs.

Although it is the federal government's property rights and regulatory interests that allegedly are implicated by the County's actions, the federal government has not initiated litigation. Instead, two environmental organizations, whose members use and enjoy the affected lands but have no ownership rights with respect to them, filed suit against Kane County, seeking an injunction against the repealed Ordinance and against any repetition of the County's actions

-4-

with respect to signs, claiming that the County Ordinance and the County's posting and removal of signs were preempted by federal law and hence unconstitutional under the Supremacy Clause. The County defended on the ground that federal law respects and recognizes R.S. 2477 rights-of-way, and that no conflict with federal law could be shown without evidence that some or all of its road claims are invalid.

Without considering any evidence whatsoever regarding the existence or validity of any of Kane County's road claims, the district court denied that the County "currently has valid existing rights under R.S. 2477 for the areas in question." Dist. Ct. Op. 2. Why? "[B]ecause the County has yet to establish the validity of those rights in a court of law." *Id.* In other words, the County has no "valid existing rights" within the meaning of FLPMA, the Executive Order, and the Monument Plan unless it has obtained a legal judgment in court. The panel majority now affirms this remarkable holding. In place of our prior holdings that R.S. 2477 routes could be "established" and "legal title" pass with "no procedural formalities," the majority now concludes that the formality of court adjudication is a prerequisite to the exercise of rights under R.S. 2477. This conclusion flies in the face of this court's holding in *SUWA*, as well as with the decades of jurisprudence on which that decision rested.

The district court's injunction forbids Kane County to exercise its R.S. 2477 rights to manage vehicle use or maintain roads within the challenged areas,

-5-

but only with respect to routes or areas "closed to such use by governing federal land management plan or federal law." The injunction reads as follows:

> The court further ENJOINS the County and ORDERS that Kane County shall not adopt ordinances, post signs, or otherwise purport to manage or open to vehicle use any route or area closed to such use by governing federal land management plan or federal law. Further, Kane County shall take no other action to invite or encourage vehicle use on any route or area closed to such use by governing federal land management plan or federal law. Kane County is enjoined from any action described above relating to any route unless and until Kane County proves in a court of law that it possesses a right-of-way to any such route and establishes the proper scope of such right-of-way in a court of law.

Dist. Ct. Op. 33.

The direct effect of the injunction will thus be felt only on routes within the Monument and other challenged areas that are closed to vehicle use (or to a subset of vehicle use, such as OHVs) as a matter of federal policy.[4] But the principle of the holding goes much farther than this. If it is true that the County does not possess a "valid existing right" under R.S. 2477 unless it has gone to court and won a judgment in its favor, this means that all of the County's road management

---

[4]The Monument Plan prohibits all vehicular travel on certain roads, subject to valid existing rights of way, and prohibits OHV travel even on routes left open. Although neither the parties nor the majority distinguish between these two types of restriction, they stand on different legal footing. The scope of an R.S. 2477 right-of-way is determined by its prior use, and may or may not extend to off-road vehicles, which were not common a decade before the passage of FLPMA in 1976. Moreover, federal land managers retain substantial regulatory authority even with regard to land subject to a valid existing right-of-way. *See SUWA*, 425 F.3d at 748. Thus, BLM might well have authority to ban OHVs from some or all roads in the Monument even if Kane County owns the claimed rights-of-way. None of these issues are before us today.

and maintenance activities over federal land are in principle illegal, since the unauthorized use, occupancy, or development of federal land is a trespass. 43 C.F.R. § 2808.10. Thus, while the immediate effect of the challenged injunction is more confined, the logic of the district court's position, now affirmed by this panel, wreaks havoc with the transportation system of the West, to the detriment of federal as well as local interests.

To make matters worse, this holding is rendered in a case where the federal government is not even present in court, at the behest of organizations whose members have absolutely no legal right or interest in the matter in question. I therefore begin with issues of standing and cause of action, and then proceed to a discussion of the merits.

## I. STANDING

To establish standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The majority talks a lot about the fact that The Wilderness Society's injury is concrete and actual, without mention of whether the injury is to a "legally protected interest." Yet the existence of a "legally protected interest" is an aspect of the required "injury in fact," which this court has described as "particularly important." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc);

*accord McConnell v. Federal Election Commission*, 540 U.S. 93, 227 (2003)

(although the plaintiffs had an interest in competing electorally with equal

resources, that interest is not "legally protected" and thus they had no standing).

We may sympathize with the plaintiffs' desire to enjoy southern Utah's canyon

country without the intrusion of vehicles, but the plaintiffs can point to no law

giving them a legally protected interest in the matter.

Much has been made of the idea that aesthetic or environmental harm is a

cognizable injury so long as the plaintiff can show that he will himself experience

the effects of that harm.  *See* Maj. Op. 16, relying on *Summers v. Earth Island

Inst.*, --- U.S. ----, 129 S.Ct. 1142, 1149 (2009), and *Sierra Club v. Morton*, 405

U.S. 727, 734 (1972); *see also Lujan*, 504 U.S. at 562–63 ("Of course, the desire

to use or observe an animal species, even for purely esthetic purposes, is

undeniably a cognizable interest for purpose of standing.").  All of these cases,

however, arose under the Administrative Procedures Act (APA) and other statutes

granting parties with aesthetic interests statutory rights to challenge agency

action.  These laws "broaden[] the categories of injury that may be alleged in

support of standing." *Sierra Club*, 405 U.S. at 738.  The Supreme Court has

explained *Sierra Club* as a case where "[t]he actual or threatened injury required

by Art. III may exist solely by virtue of statutes creating legal rights, the invasion

of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975)

(quotations omitted); *see also Summers*, 129 S.Ct. at 1148; *Lujan*, 504 U.S. at

557–58; *Sierra Club*, 405 U.S. at 733.  This case does not arise under the APA,

does not challenge agency action, and is not predicated on any statutes creating

judicially enforceable rights of an aesthetic or environmental nature.

The majority asserts that "[t]he environmental groups have shown that their

members' legally protected interests in enjoying the areas at issue are harmed by

unlawful OHV use."  Maj. Op. 19.  But the majority opinion is bereft of any

citation to a statute that creates any such "legally protected interests."[5]  Indeed,

the majority concedes that the plaintiffs "do not allege a statutory injury," but

only "claim harm to their recreational and other interests caused by unlawful

OHV use."  Maj. Op. 27.  But if the plaintiffs do not allege a statutory injury,

how are their recreational and other interests "legally protected"?

The majority relies on *San Juan County v. United States*, 503 F.3d 1163

(10th Cir. 2007) (en banc), for the proposition that "'SUWA's environmental

---

[5] The majority does not cite FLPMA as a source of such interests, though it is the only statute that remotely seems relevant.  FLPMA imposes on federal land managers certain responsibilities to protect the land from "unnecessary or undue degradation," 43 U.S.C. § 1732(b), which might well extend to restricting OHV use.  *E.g., Southern Utah Wilderness Alliance v. Dabney*,  F. Supp.2d 1205 (D. Utah 1998) (suit against National Park Service to compel closure of a four-wheeler route in Canyonlands National Park); *but cf. Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) (holding that BLM has no judicially enforceable duty to exclude all ORVs from wilderness study areas).  Any such duties, however, run against the federal land manager, not against the County or private parties, and the plaintiffs are not suing BLM.  FLPMA also provides that "all actions by the Secretary concerned under this Act shall be subject to valid existing rights."  43 U.S.C. §1701 Savings Provision (h).

-9-

concern is a legally protectable interest.'" Maj. Op. 18, *quoting San Juan*, 503 F.3d at 1199.  But *San Juan* provides no support for the plaintiffs here.  In *San Juan*, we considered both the standing of environmental groups to participate in a Quiet Title action involving disputed R.S. 2477 rights-of-way and their right to intervene in such a case under Fed. R Civ. P. 24.  Standing and intervention present two different questions, to which this court gave opposite answers.  The language quoted by the majority comes from the court's discussion of the requirements for *intervention*—not its discussion of *standing*.  *See San Juan*, 503 F.3d at 1199.  This court approved the environmental groups' *standing* only because they were seeking to intervene in a lawsuit where other parties already had Article III standing, which was sufficient to support subject matter jurisdiction.  *See San Juan*, 503 F.3d at 1172 ("parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case'") (internal citation omitted).  Here, of course, there is no other party, and The Wilderness Society's lack of standing is fatal to the court's subject matter jurisdiction.

Essentially conceding that the plaintiffs have not asserted any legally protected interest in the ordinary sense of that term, the majority declares that the term "legally protected interest" means nothing more than "'the sort of interest that courts think to be of sufficient moment to justify judicial intervention.'" Maj.

Op. 17-18, *quoting In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir.

2006).  Surely not. Surely we have not gone so far down the road of judicial self-

empowerment that plaintiffs now are accorded standing to bring whatever claims

that "We, the Judiciary" consider "of sufficient moment," whether or not the

representatives of "We, the People" have enacted laws protecting them.[6]  Article

III standing principles are supposed to be a *limitation* on the "role of the courts in

our democratic society."  *Allen v. Wright*, 468 U.S. 737, 750 (1984), *quoting

Warth*, 422 U.S. at 498.  It would make no sense to measure the bounds of that

limitation by the judiciary's own assessment of what is important for the judiciary

to decide. In any event, the Supreme Court has not abandoned the requirement of

a "legally protected interest," and neither has this court sitting en banc.  *See

Initiative & Referendum*, 450 F.3d at 1093 (noting that the "legally protected

interest" requirement retains "independent force and meaning").  This panel

should not do so, either.

At bottom, this is a real property dispute between the owner of the servient

estate (the federal government) and the owner of a purported easement (the

County).  The two property owners have so far avoided confrontation in court and

(for all we know) may be seeking a course of mutual accommodation, as was

---

[6] The case from which the majority takes this language calls the quoted understanding of standing a "somewhat cynical view," and goes on to hold that the plaintiffs were asserting an interest protected by the Free Speech Clause. *In re Special Grand Jury 89-2*, 450 F.3d at 1172.

suggested in *SUWA*, 425 F.3d at 746–47. Interested outsiders, whether they are environmental groups hoping the federal government has full ownership or user groups hoping the counties have control, have no standing to enforce property rights belonging to the County or the federal government. *See Sw. Four Wheel Drive Ass'n v. BLM*, 363 F.3d 1069 (10th Cir. 2004) (OHV enthusiasts cannot assert counties' R.S. 2477 rights against the federal government); *San Juan County v. United States*, 503 F.3d 1163, 1203–07 (10th Cir. 2007) (en banc) (environmental groups may not intervene in Quiet Title suit to support federal government's claims against a county).[7]

Any interest members of The Wilderness Society have, in the peaceful enjoyment of the Monument, is purely derivative of the federal government's ownership of the land and its discretionary decisions with regard to vehicle use. Their complaint thus implicates the prudential doctrine of third-party standing, which is more demanding than the mere requirement of injury in fact. That doctrine holds that even if the plaintiff has suffered some harm, he still "generally must assert his own legal rights and interests, and cannot rest his claim to relief

---

[7] In *San Juan*, environmental groups with seemingly the same interests the plaintiff groups assert here were denied permission even to intervene, let alone to bring a suit in their own name. As noted above, we held that the environmental intervenors did not need to establish standing because there was an original party with Article III standing to sustain the jurisdiction of the court. 503 F.3d at 1171; *see id.* at 1172 ("if the original party on whose side a party intervened drops out of the litigation, the intervenor will then have to establish its own standing to continue pursuing litigation") (internal citation omitted).

on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499; *see also Aid for Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006). In some cases Congress grants a statutory right of action for a party who suffers *some* injury to bring a claim based on another's rights. *See Warth*, 422 U.S. at 501. But when, as in this case, Congress has not granted a statutory right for injured parties to invoke the legal rights of others, a plaintiff may bring such a claim only if he can show not only an injury in fact, but also "a close relation to the third party" and a "hindrance or inability of the third party to pursue his or her own claims." *Lane v. Simon*, 495 F.3d 1182, 1187 (10th Cir. 2007) (quoting *Terrell v. I.N.S.*, 157 F.3d 806, 809 (10th Cir. 1998)). The Wilderness Society has shown neither a close relationship to the United States nor any reason to think the United States might be hindered from itself enforcing its own property rights. That leaves us with a situation where the courts are being "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 500.

Third-party standing limitations make imminent sense. Imagine that my next-door neighbor, who keeps his property neat and tidy, is faced with a competing claimant to the land, who is likely to allow the property to fill with weeds. I might very much hope my neighbor wins. My property values and

-13-

aesthetic interests could seriously be affected. I may be impatient with my neighbor's inclination toward compromise and apparent disinclination to go to court. But no one would say I have standing to sue in defense of my neighbor's property rights. The Wilderness Society is in precisely that situation.

The plaintiffs' lack of standing to bring suit on the signage issues is, if anything, even clearer. On one occasion, county officials removed BLM signs from what they regarded as county roads, and later posted signs with decals indicating that OHV use on some roads was permitted. These actions may well have violated federal trespass law. But the federal government chose not to prosecute. Appropriate federal officials registered an objection to the signs, and the County removed them, even if not promptly. The federal government did not see fit to bring any further action against the County, perhaps as a matter of comity. Private citizens have no standing to pile on with an independent federal lawsuit. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Initiative & Referendum*, 450 F.3d at 1093 (same). Members of The Wilderness Society can no more sue the County for its alleged trespasses than it can sue those who violate BLM regulations on littering, campfires, or dog leashing. Prosecutorial discretion is vested in the government, and the government has apparently exercised that discretion in favor of taking no action against the County. The Wilderness Society has no standing to step in.

-14-

## II. Cause of Action

As this is essentially a property dispute that is being litigated by a party that lacks any rights in the property, we are faced with the related question of what could possibly serve as the cause of action. It is not property or contract, as The Wilderness Society has no property or contract rights in Kane County roads; it is not administrative, as The Wilderness Society has not challenged agency action; it is not statutory, as The Wilderness Society has pointed to no statute that gives it any legal right, implied or otherwise, in the roads. It instead relies simply on the Supremacy Clause and the astounding idea that any time a state action arguably conflicts with a federal law, a cause of action exists.

The plaintiffs, and now the majority, derive this principle from this court's decision in *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258 (10th Cir. 2004) and the Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). In *Qwest*, we held that "[a] federal statutory right or right of action is not required where a party seeks to enjoin the enforcement of a regulation on the grounds that the local ordinance is preempted by federal law," and that "[a] party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action." 380 F.3d at 1266. We derived this from *Shaw*, where the Supreme Court stated that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of

-15-

the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 463 U.S. at 96 n.14.

In *Qwest* and *Shaw*, however, the plaintiffs were raising preemption as a *defense* to the enforcement against themselves of state regulations that conflicted with federal law. When threatened with the enforcement of a state or local law that has been preempted, the target can of course raise a preemptive defense in the form of a suit for injunctive or declaratory relief. *See Shaw*, 463 U.S. at 96 n.14 (allowing a "plaintiff who seeks injunctive *relief* from state regulation, on the ground that such regulation is pre-empted" to sue) (emphasis added). That does not mean that a third party can bring a freestanding preemption claim to enforce compliance with federal law, as if "preemption" were a cause of action. The Wilderness Society has neither a claim nor a defense under federal law, but only the desire to compel the County to conform to the Society's understanding of what federal regulations entail. That is an entirely different matter than the defensive use of preemption in *Qwest* and *Shaw*.

Unless Congress has expressly or impliedly granted private persons a cause of action to enforce federal law, which the plaintiffs have not even attempted to claim, there is no basis for such a suit. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982). If "preemption" were a sufficient basis for a cause of action, then every federal statute would implicitly authorize a private

-16-

cause of action against a state or local governmental defendant. That is not the law. *See, e.g., Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002) (plaintiffs may not sue under § 1983 for state violation of federal statute unless the statute creates an "unambiguously conferred right"); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 11 (1981) (Federal Water Pollution Control Act and Marine Protection, Research, and Sanctuaries Act of 1972 do not create cause of action against state and local officials); *Legal Environmental Assistance Foundation, Inc. v. Pegues*, 904 F.2d 640, 642–44 (11th Cir. 1990) (refusing to allow plaintiffs to allege state violation of Federal Water Pollution Control Act as a claim arising under the Supremacy Clause, as the "FWPCA precisely defines the means of redress for its violation and for challenging the Administrator's actions."); *Andrews v. Maher*, 525 F.2d 113, 118–19 (2d Cir. 1975) ("We reject the contention [that Plaintiffs can bring claim that state welfare regulations violate the Social Security Act under the Supremacy Clause] because it transforms statutory claims into constitutional claims by verbal legerdemain.").

Thus, even apart from lack of standing, the plaintiffs assert no legal claim upon which relief may be granted. FLPMA provides no implied cause of action for private persons to enforce regulations enacted under its authority. As the Supreme Court has recently explained, "[i]n the absence of congressional intent the Judiciary's recognition of an implied private right of action 'necessarily extends its authority to embrace a dispute Congress has not assigned it to

-17-

resolve.'" *Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, ___ ,128 S.Ct. 761, 772 (2008) (citation omitted). The same would be true if the Supremacy Clause were employed as a cause of action whenever state or local action is said to conflict with federal law.

The Supremacy Clause is not an independent source of rights but a rule of priority that determines who wins when state and federal law conflict. *See Andrews*, 525 F.2d at 119 ("The Supremacy Clause does not secure rights to individuals; it states a fundamental structural principle of federalism."). The Wilderness Society has pointed to no federal right to enforce, and the only federal statute it has pointed to is FLPMA, which neither implicitly nor explicitly gives it a private right of action. *See* note 5, *supra*. The only legal rights at issue here are the rights of the federal government in public lands and the rights of Kane County in R.S. 2477 roads. The majority has nevertheless allowed The Wilderness Society to sidestep its apparent lack of any statutory or common law right by simply invoking the Supremacy Clause. That is not a proper substitute for a cause of action.

### III. The Merits

The plaintiffs' claims in this case purport to be based on preemption, but they meet none of the established tests for preemption. "Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is

-18-

the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (alterations omitted); *see also Integrity Management Intern., Inc. v. Tombs & Sons*, 836 F.2d 485, 494 (10th Cir. 1987). This requires preemption challenges to be considered "in light of the presumption against the preemption of state police power regulations." *Cipollone*, 505 U.S. at 518. "We rely on the presumption because respect for the States as 'independent sovereigns in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt [state law].'" *Wyeth v. Levine*, --- U.S. ----, 129 S.Ct. 1187, 1195 n.3 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

I confine this merits analysis to Kane County Ordinance 2005-03, rather than the signage issues. It would be strange to say that discrete actions, such as posting or taking down signs, could be "preempted." Such actions may violate federal law, in which case they are unlawful unless authorized by some state or local law that has not been preempted. But I am aware of no cases in the Supreme Court or this Court where preemption analysis has been applied to discrete acts. I will therefore confine this analysis to the majority's holding that the Kane County Ordinance is preempted.

There are at least three clear reasons why the Kane County Ordinance in question is not preempted by federal law.

### A. Federal Regulations Are Expressly Subject To "Valid Existing Rights," Thus Precluding Preemption

First, in this case, far from expressly preempting state and local law, or evincing an intention to do so, Congress (in FLPMA), the President (in the Executive Order creating the Monument), and the BLM (in the Monument Plan), all expressly made federal land management "subject to valid existing rights," with specific reference to rights-of-way established under R.S. 2477. Thus, far from preempting county R.S. 2477 rights, federal law expressly "preserved and protected" them. *SUWA*, 425 F.3d at 760. It is therefore hard to see how this Ordinance could possibly conflict with federal law. The Ordinance applies only to county roads, which means that it extends only insofar as the County's R.S. 2477 claims are valid. The Monument Plan closes only those roads that are not "subject to valid existing rights," which means that it applies only insofar as the County has no valid R.S. 2477 claim. The county and federal legal regimes thus neatly dovetail and avoid any possible conflict. Of course, there might be conflict over the particularized question of which routes are in fact on R.S. 2477 rights-of-way, but that is a fact-intensive inquiry that the district court did not attempt to engage in. The point is that the Ordinance and the Monument Plan are not facially in conflict, and whether there is any "as applied" conflict with respect to particular routes depends on claims that might be made by the County and the BLM, but which have not been made in this case.

The district court's error, now affirmed, was to disregard the structure of R.S. 2477 and to hold that a County cannot possess a "valid existing right" under R.S. 2477 unless it has obtained a judgment in its favor in court. This is in plain violation of this court's past interpretations of the statutory scheme. Most recently, in *San Juan County v. United States*, 503 F.3d 1163, 1168 (10th Cir. 2007) (en banc), the lead opinion for the en banc court, in which the author of today's majority opinion joined, stated that an R.S. 2477 right-of-way "could have come into existence *without any judicial or other governmental declaration*" (emphasis added). Presumably, if the route "came into existence" in the past and has not disappeared or been relinquished, it is now a "valid existing right," despite the lack of any judicial declaration. In *SUWA*, we stated that:

> [u]nlike any other federal land statute of which we are aware, the establishment of R.S. 2477 rights of way required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested.

425 F.3d at 741. Presumably, if R.S. 2477 rights-of-way were "established" without formalities, the lack of such formalities cannot be a reason to hold that the rights-of-way are not "valid" and "existing" for purposes of preemption analysis. In *Sierra Club v. Hodel*, 848 F.2d 1068, 1078 (10th Cir. 1988), we stated that R.S. 2477 rights "became effective upon the construction or establishing of highways, in accordance with the State laws," *quoted in San Juan County*, 503 F.3d at 1168. Presumably, if a right became "effective" upon

-21-

establishment in accordance with state law, it is also "valid" and "existing" within the meaning of that term in FLPMA, the Executive Order, and the Management Plan.

In none of these cases was there any suggestion that judicial adjudication was necessary to effectuate a right-of-way. What would being "vested" and "effective" mean, if the holder cannot manage or use the right without first going to court? The majority's notion that R.S. 2477 rights are not "valid" or "existing" in the absence of a judicial declaration thus contradicts repeated statements and holdings of this court.

Indeed, if the majority's view were the law, a number of cases in this court would have been decided on a different basis. Most recently, in *Kane County v. Salazar*, 562 F.3d at 1077, Kane County brought an administrative challenge against the Monument Plan, arguing (among other things) that FLPMA required the agency to reach internal administrative determinations regarding all R.S. 2477 claims within the Monument before closing any disputed routes. *Id.* at 1082–83. If today's majority interpretation were the law, this would have been an easy case: none of Kane County's claimed roads have been adjudicated in court; therefore the County had no "valid and existing claims" within the meaning of FLPMA and BLM had no statutory duty to consider any such claims. Instead, this court rejected the County's argument because "the County plaintiffs' complaint did not identify, with specificity, any alleged R.S. 2477 rights-of-way, nor did it

identify or challenge any particular road closures that may have occurred simultaneously with, or subsequent to, the Plan's issuance." *Id.* at 1087 n.5. In *SUWA*, several counties performed maintenance work on roads whose rights-of-way had never been adjudicated. If today's majority interpretation were the law, this court could have declared those activities unlawful in a few short pages, since without a valid existing right, the counties had no authority to maintain or manage roads on federal property. Instead, the court set forth at length the standard for determining the validity of R.S. 2477 claims, which involves a fact-intensive inquiry into public use prior to repeal of the statute in 1976. *See* 425 F.3d at 788. In *Hodel*, Garfield County attempted to pave a section of the historic Burr Trail, which crosses both BLM and National Park Service land. 848 F.2d at 1073. The federal government went to court to prevent the work, and the district court held a ten-day trial to determine the validity and scope of the claimed right-of-way. Again, if today's majority interpretation were the law, the federal government should have won without a trial, simply by pointing out that Garfield County had never obtained a judicial determination of its claimed right-of-way. It seems obvious that today's majority decision is a major departure from past precedents and interpretations. If the County may own a "valid existing right" in the absence of a judicial ruling, then FLPMA, the Executive Order creating the Monument, and the Monument Plan all recognize and defer to that right. Federal law does not preempt what it expressly recognizes.

-23-

The majority responds that "creation and vestment of R.S. 2477 rights is not at issue here." Maj. Op. 39. "Instead, we must determine whether Kane County can exercise management authority *before* it proves that it has R.S. 2477 rights of way." Id. at 39-40 (emphasis in original). But that is precisely the point at issue: under our precedents, we do not treat "creation and vestment" as a different question than the right to exercise management authority. The latter follows from the former. The majority must think that "validity" of a claim means one thing for purposes of substantive R.S. 2477 law (namely, continuous public use, without need for procedural formalities), and something else for purposes of FLPMA, the Executive Order, and the Management Plan (namely, judicial adjudication). There is no basis for such a dichotomy.

This does not mean, of course, that mere claims of rights-of-way are tantamount to title. In the event of controversy over particular claimed routes, raised by parties with standing and a cause of action, the county bears the burden of proving it has a right-of-way. *SUWA*, 425 F.3d at 768. But it does mean that the district court was wrong to hold that the lack of prior judicial adjudication means that a county right-of-way is not a "valid existing right" that would be exempted from closure under the Management Plan. Neither side in this conflict has proved its right to relief. The district court should have denied relief to either side on this record and allowed this matter to percolate until such time as a real

party in interest brings a properly focused conflict to the attention of a court, with evidence to back it up.

The district court went so far as to hold that a road such as the Skutumpah Road, which the federal government explicitly recognizes as an R.S. 2477 right-of-way (App. 2229, 2282; *see SUWA*, 425 F.3d at 743 (noting that the federal parties did not challenge the existence or validity, but only the scope, of the Skutumpah right-of-way)), is not a "valid existing right." This goes to show not only how far afield the district court's interpretation of the law is from longstanding practice, but also the mischief in allowing third parties with no legal interest in the land to litigate these claims. When the owner of the easement and the owner of the underlying land agree about the existence and validity of the easement, it is unprecedented for a court to rule otherwise at the behest of third parties whose rights, if any, are entirely derivative.

**B. Even Apart From The Reservation Of "Valid Existing Rights," The County Ordinance And BLM Regulations Can Coexist**

Second, even apart from federal recognition of valid existing rights–that is, even if County Ordinance 2005-3 and the Monument Plan applied their different vehicle rules to the same roads—the majority's view is based on a misunderstanding of the relation between federal and state or local law. In our federal system of government, the various layers of government—federal, state, and local—have independent authority to determine whether and how to regulate

-25-

matters that fall within their enumerated or reserved powers. States and localities do not have to pass ordinances forbidding all conduct that is forbidden under federal law. If the BLM has statutory and constitutional authority, it can prohibit OHV travel on the roads that cross the Monument, no matter what the County does. The federal government owns the land, and has the presumptive right to regulate activities that take place on it. It does not have authority to force Kane County to pass an ordinance forbidding vehicular travel on county roads, *see New York v. United States*, 505 U.S. 144 (1992), and it does not have authority to require Kane County to enforce the prohibitions of the Monument Plan. *See Printz v. United States*, 521 U.S. 898 (1997).

Applying this analysis, Kane County Ordinance 2005-03 did not conflict with federal regulation—even if we disregard, for the moment, the fact that federal regulations expressly recognize and defer to valid existing rights-of-way. Assume for the moment that there is a BLM regulation prohibiting OHVs and a County ordinance permitting OHVs on the same roads. A visitor to the Monument can comply with both federal and county vehicle rules by obeying the more restrictive: in this case, the federal. The county ordinance does nothing more than make OHV travel permissible as far as the county is concerned. The BLM regulation remains in place and is fully enforceable. Federal and state laws conflict only if the parties they regulate cannot simultaneously comply with both sets of law. *See California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272,

290–91 (1987) (holding that there is no conflict preemption when the state law "does not prevent [affected persons] from complying with both the federal law (as petitioners construe it) and the state law"). That is not a problem here. The laws are different, but they are not conflicting within the meaning of preemption analysis.

Consider an analogy to California's laws permitting the medical use of marijuana. Federal law prohibits this use; state law permits it. *See Gonzales v. Raich*, 545 U.S. 1, 5–7 (2005). State law may even encourage it. No one would argue, however, that California's law is preempted. California has the right to legalize conduct for purposes of state law that the federal government makes illegal, even if the effect is to increase the likelihood of violations of federal law. The same is true here. Kane County has the right to legalize OHV use on its roads, even if such use violates federal law. By the same token, the federal government is free to enforce its rules without Kane County's help, just as the Department of Justice is free to enforce its drug laws without California's help.

The majority claims that passage of the County Ordinance "increased—and if left uncorrected, will increase—OHV usage on the roads," and that an order declaring the Ordinance unconstitutional "would likely dissuade at least one person from driving an OHV on a disputed route." Maj. Op. 21. But this is no different from saying that California law "encourages" the medical use of

marijuana. States are free to "encourage" activity by not outlawing it, even if the federal government disapproves.

The majority notes that, unlike passage of the Ordinance itself, the County's placement of signs on roads within the Monument *would* interfere with enforcement of federal law, Maj. Op. 41-42, and I do not disagree. The County had no right to erect misleading signs purporting to authorize OHV travel within the Monument, over the objections of the federal land managers. Holders of an easement may manage or maintain routes in accordance with the status quo, but may not unilaterally effectuate changes. *SUWA*, 425 F.3d at 745. If the County persisted in posting unauthorized signs and BLM brought suit, I would likely agree with the majority that BLM is entitled to relief.[8] But the majority is wrong to bootstrap the signage issue into a holding that the Ordinance is also preempted. The majority offers no persuasive explanation for why the Ordinance itself interferes with federal law. It follows that the district court was wrong to enjoin it.

---

[8]This assumes that the County's signs were new, rather than merely replacements for long-standing County road signs, which is unclear from the record.

-28-

**C.** **Even If There Were A Conflict Between County Law And Federal Law, We Cannot Determine Which Prevails Without Adjudicating The County's Claimed Rights-of-Way**

Third, even if we assume that there may be some conflict between the County and the BLM over some disputed routes, the majority offers no reason why it is the County's claims that must automatically yield. R.S. 2477 disputes are fact-intensive. They require the taking and evaluating of evidence regarding past patterns of public use. The majority states that "Kane County simply reasserts that its R.S. 2477 rights are valid," Maj. Op. 39, but this is not so. The County loudly and repeatedly sought an opportunity to prove its claims in district court, but was rebuffed. If it is true that "Kane County cannot defend a preemption suit by simply alleging the existence of R.S. 2477 rights of way," as the majority says (Maj. Op. 38), it should also be true that the plaintiffs cannot win a preemption suit by simply alleging the opposite. Until one side or the other proves its claims, there is no basis for judicial intervention on either side.

To be sure, the ultimate burden of proof in litigation over a disputed R.S. 2477 claim lies with the claimant. *SUWA*, 425 F.3d at 768. But it does not follow that the County's claims are not "valid" or "existing" until they are proven. That would confuse the burden of persuasion *within* litigation with the absence of rights *outside of* litigation. As a general matter, people are free to exercise rights even when those rights are disputed, without first going to court,

-29-

on the understanding that persons with opposing interests may have the corresponding right to sue to stop them, or for damages. The scheme laid out in *SUWA* for resolving R.S. 2477 conflicts permits both sides, local and federal, to exercise their status quo rights. If the federal government believes the County has overstepped its rights in any particular, it may bring a trespass action (and obtain a TRO or preliminary injunction if fast action is necessary). If the County believes that BLM has invaded its rights in some particular way, it may bring either an administrative protest or a Quiet Title Action. *See Kane County*, 562 F.3d at 1091 (Henry, C.J., concurring). Or the two sides may avoid confrontation.[9] To say that the County's claims are preempted until they are proven is to presume, without proof, that none are valid. That defeats the point of vested property rights.

## IV. Conclusion

Because of its lack of administrative formalities, R.S. 2477 has created the potential for conflict and uncertainty over the respective rights of the putative easement owner and the owner of the servient estate, namely, the county and the federal government. As this Court has noted in the past, these conflicts and

---

[9] In this case, for example, the evidence indicates that BLM has refrained from taking steps to block travel on at least some disputed routes until the legal picture has been clarified, App. 1914, and the County has repealed its ordinance and removed offending signs for the same reason. This reinforces why the rules of standing matter. When the two parties in interest show restraint, outside interests should not be permitted to foment litigation.

uncertainties require both parties to act in a spirit of "mutual accommodation." *SUWA*, 425 F.3d at 746. And as might be expected of interdependent levels of government, in the vast majority of cases, conflicts are resolved in just that way.

That is why it is so important to ensure that interest groups, which do not share the governments' interests in comity and cooperation, should not be allowed to hijack this process. And it counsels against sweeping judicial holdings that grant an easy and unjustified victory to one side or the other. Resolution of disagreements regarding roads in this part of the country is a matter of intense local interest. One side or the other, the county or the federal government, may go to court. But there is no need to do so lightly or prematurely. By holding that counties have no valid existing rights to manage or maintain roads over federal land without first going to court, the majority today has made mutual accommodation more difficult. I respectfully dissent.